# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

REBECCA ADELE WILDER,

        Defendant-Appellant.

FOR PUBLICATION
October 28, 2014
9:15 a.m.

No.  316220
Alger Circuit Court
LC No.  2011-001963-FH

Before:  MURPHY, C.J., and SAWYER and M. J. KELLY, JJ.

MURPHY, C.J.

Defendant appeals by delayed leave granted her jury-trial conviction of possession of a firearm while intoxicated (PFWI), MCL 750.237. The jury acquitted her of felonious assault, MCL 750.82, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and domestic violence, MCL 750.81(2). Defendant was sentenced to serve nine months' probation and 60 days in jail. At trial, defendant herself testified that she was intoxicated and that she briefly possessed a firearm. According to defendant, however, the possession was solely for the purpose of moving the gun for personal safety or precautionary reasons, so that it would not be readily accessible by her domestic partner who was angry at defendant, was familiar with the gun's location, and who was also intoxicated. This appeal poses the question of whether the state and federal constitutional right to keep and bear arms, US Const, Am II; Const 1963, art 1, § 6,[1] precluded defendant's prosecution and conviction under

---

[1] The Second Amendment of the United States Constitution provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Michigan Constitution, Article 1, Section 6, provides, "Every person has a right to keep and bear arms for the defense of himself and the state." The Second Amendment is applicable to the states by virtue of the Due Process Clause of the Fourteenth Amendment. *McDonald v City of Chicago, Ill*, 561 US 742; 130 S Ct 3020, 3026; 177 L Ed 2d 894 (2010).

-1-

MCL 750.237, or minimally requires remand for a new trial, in this as-applied challenge of the statute. We affirm.

This case arises out of a domestic dispute. On July 2, 2011, at about 5:00 a.m., defendant, a retired deputy sheriff, called 911 to report a possible home invasion. A short time later, defendant called police and stated that a response was no longer necessary. The police nevertheless proceeded to defendant's home to investigate. Two responding state troopers testified that upon their arrival at the home, they found both defendant and her domestic partner, the complainant, to be in an intoxicated state, with defendant being the more intoxicated of the pair. The complainant told the troopers that defendant had threatened and assaulted her. At the scene, the complainant took a preliminary breathalyzer test (PBT), which reflected a blood-alcohol content of 0.13. Defendant refused to take a PBT at the scene; however, she did ultimately submit to a PBT about three hours later at the county jail, which revealed a blood-alcohol content of 0.167.

According to the complainant, defendant was upset over various matters and somewhat angry before defendant retired to the couple's shared bedroom in the early morning hours of July 2, 2011. The complainant decided to sleep on the living-room couch. The complainant testified that within 10 to 15 minutes, defendant emerged from the bedroom and began hitting and strangling the complainant, yelling for the complainant to get out of the house. The complainant broke free from defendant's grasp, grabbed a sweatshirt, and then ran to the front door. The complainant indicated at one stage during her testimony that before she exited the home, complainant turned around and was confronted by defendant pointing a handgun at complainant's chest from a distance of about six inches. Later in her testimony, the complainant explained that complaintant was already outside the home when defendant first brandished the gun, aiming it directly at complainant through a porch screen window or door. The complainant testified that defendant verbally threatened to kill her. While complainant was outside, defendant remained in the home, and the complainant pleaded with defendant for an opportunity to retrieve some pants and her medicine, but defendant refused her request. From outside, the complainant could hear defendant through the screen call 911 and report that an intruder was attempting to enter the home. After police subsequently arrived, the complainant was allowed to retrieve some items from the bedroom. In her bedroom closet, complainant saw the gun that defendant had earlier brandished, and she gave it to the troopers.

Defendant took the stand in her own defense and presented a different account of events than those elicited from the complainant. Defendant testified that she had been drinking alcohol throughout the day on July 1, 2011, and that when the complainant arrived home from work shortly before midnight on July 1, the two drank several beers. Defendant acknowledged that she was intoxicated at the time of the charged offenses, but the complainant was likewise intoxicated. Defendant testified that in the early morning hours of July 2, as the two were consuming alcohol, they discussed various matters, including the possibility of separation. Defendant claimed that the complainant was angry and that the major point of contention between the two stemmed from complainant's incessant requests or demands for sex, which defendant had been rejecting for some time. Defendant also recounted earlier episodes in the relationship with the complainant in which an angry complainant had smashed defendant's fishing rod against a wall and threw defendant's laptop computer to the floor. Given the complainant's inebriated state, her anger, and her prior acts of property destruction, and while

-2-

complainant was in the bathroom, defendant moved a handgun she owned from the bottom shelf of her nightstand next to her bed to the complainant's personal closet in the bedroom, even though defendant had her own closet in the room. According to defendant, complainant was fully aware that the gun was kept on the lower shelf of the nightstand. And defendant explained that she moved the gun because she was fearful that the complainant might use it against her.

When asked on cross-examination why defendant tossed the gun into complainant's own closet considering the nature of defendant's fear, defendant claimed that she had to move quickly and complainant's closet was nearest to the nightstand. Defendant testified that she asked the complainant to leave, but complainant retorted that defendant could not make her leave. Defendant subsequently went to sleep, but was later awakened and frightened by the sound of someone stirring outside of her home. The person demanded to be let in, and defendant, not recognizing the voice at first and not being able to see the individual in the darkness, called 911, as she believed that a home invasion was occurring. Shortly thereafter, defendant discovered that it was the complainant outside of the home, and defendant let her inside. Defendant testified that she then called police to explain that a response was no longer necessary, but the police nevertheless responded. Defendant denied threatening or physically assaulting the complainant, and she denied brandishing the handgun and pointing it at complainant.

Defendant was charged with felonious assault, MCL 750.82, felony-firearm, MCL 750.227b, domestic violence, MCL 750.81(2), and PFWI pursuant to MCL 750.237, which provides in relevant part as follows:

> (1) An individual shall not carry, have in possession or under control, or use in any manner . . . a firearm under any of the following circumstances:
>
> (a) The individual is under the influence of alcoholic liquor . . . .
>
> . . .
>
> (c) Because of the consumption of alcoholic liquor, . . . the individual's ability to use a firearm is visibly impaired.

Before trial, defendant moved to dismiss the PFWI charge, arguing that MCL 750.237 was unconstitutional as applied to the circumstances of this case, as it infringed upon her Second Amendment right, as well as her right under Const 1963, art 1, § 6, to keep and bear arms, especially within the confines of her home. Defendant did not assert that MCL 750.237 was facially unconstitutional. The trial court denied the motion, ruling that "given the broad powers of the [L]egislature to pass legislation for the general health, safety and welfare of the public, and combined with the minimalistic nature of the penalty associated therewith, a 90-day misdemeanor penalty, the issue does not raise itself to the level of constitutional scrutiny, as suggested by . . . [d]efendant."

Following the presentation of the prosecution's proofs at trial, defendant moved for a directed verdict on the PFWI charge for the constitutional reasons previously argued, and the court denied the motion, standing by its original ruling. The jury was instructed as follows regarding the charge:

The People to prove this charge must first prove as follows, that the defendant carried or possessed or used or discharged a firearm. Secondly, that the defendant was under the influence of alcoholic liquor, or that her ability to use a firearm was visibly impaired because of the consumption of alcoholic liquor . . . at the time she carried, or possessed, or used or discharged the firearm.

At the end of this instruction, the trial court stated, "And an objection to this instruction is noted for the record, Mr. Casselman [defense counsel]."

Defendant was acquitted of all charges except the charge of PFWI, for which defendant was found guilty by the jury. Following trial, defendant filed a motion for judgment notwithstanding the verdict, which was denied, and subsequently she filed a motion for new trial or a directed verdict of acquittal, which was also denied. The primary basis for these motions was the alleged infringement of defendant's state and federal constitutional right to keep and bear arms, along with associated or interwoven claims of instructional error. In the motion for new trial or directed verdict of acquittal, defendant cited and relied on a recently issued opinion from this Court in *People v Deroche*, 299 Mich App 301; 829 NW2d 891 (2013). The panel in *Deroche* held that the Second Amendment precludes a prosecution under MCL 750.237 if the prosecution's theory of guilt is one of constructive possession of a firearm in one's own home. *Id.* at 303. In denying defendant's motion in a written opinion, the trial court distinguished *Deroche* on the basis that in the case at bar, there was evidence of actual possession, along with evidence that defendant used the gun to threaten and assault the complainant. Although the court recognized some similarities to *Deroche*, they were insufficient to support a new trial or a directed verdict of acquittal. The trial court further elaborated:

> The record is clear that the [d]efendant was in actual possession of a firearm while intoxicated, during a domestic dispute, by her own admission. The purpose of her handling the firearm at the time, for stated safety purposes, can certainly be argued on the merits, but the fact that a domestic dispute was the underlying circumstance, fueled by alcohol, with the presence and actual possession of a firearm, cannot be discounted in the overall analysis. These facts may not have escaped the jury also in their decision-making process.

With respect to jury instructions, the trial court ruled that defendant failed to request, despite having the opportunity, instructions that she was now claiming should have been given, e.g., one defining "possession" or one framing the elements of PFWI around the right to keep and bear arms. The trial court additionally ruled that defendant waived instructional error by expressly indicating satisfaction with the instructions as given.

This Court granted defendant's delayed application for leave to appeal. *People v Wilder*, unpublished order of the Court of Appeals, entered December 6, 2013 (Docket No. 316220). On appeal, defendant argues that given the state and federal constitutional right to keep and bear arms, it was lawful for defendant to move the firearm within her own home for the purpose of secreting it from the complainant whom defendant feared might misuse the gun, despite the fact that at the time of the gun's movement, defendant was under the influence of alcohol. Accordingly, it is defendant's view that the conviction under MCL 750.237 cannot stand constitutional scrutiny. In response, the prosecution argues that MCL 750.237 is constitutional

as applied to the circumstances of this case, considering that defendant had actual possession of the gun while intoxicated and that there was evidence that defendant used the firearm to threaten and assault the complainant. Defendant replies, however, that she was acquitted of the felonious assault, felony-firearm, and domestic violence charges.

We review de novo the constitutionality of a statute. *People v Loper*, 299 Mich App 451, 457; 830 NW2d 836 (2013). The Second Amendment and Const 1963, art 1, § 6, both guarantee an individual "a right to keep and bear arms for self-defense." *People v Yanna*, 297 Mich App 137, 142; 824 NW2d 241 (2012). The Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Dist of Columbia v Heller*, 554 US 570, 635; 128 S Ct 2783; 171 L Ed 2d 637 (2008); see also *Deroche*, 299 Mich App at 305-306 (Second Amendment guarantees the right to possess a firearm in case of confrontation). However, as explained by the United States Supreme Court in *Heller*, 554 US at 626-627, some limits can be placed on the right to keep and bear arms:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. [Citations omitted; see also *Deroche*, 299 Mich App at 306-307.]

This Court in *Deroche* acknowledged that there are constitutionally-acceptable categorical regulations of gun possession and then discussed the particular statute at issue here, MCL 750.237:

> It follows that a statute, such as the one in this case, could fall within the categories of presumptively lawful regulatory measures. Like the restrictions preventing felons, the mentally ill, or illegal drug users from possessing firearms because they are viewed as at-risk people in society who should not bear arms, individuals under the influence of alcoholic liquor may also pose a serious danger to society if permitted to possess or carry firearms because those individuals will have "difficulty exercising self-control, making it dangerous for them to possess deadly firearms." At this juncture, assuming that the statute at hand is facially constitutional, the issue is whether the statute, as applied to defendant, is unconstitutional. [*Deroche*, 299 Mich App at 307-308 (citations omitted).]

Again, defendant pursued an as-applied constitutional challenge and not a facial challenge of MCL 750.237. A facial challenge involves a claim that a legislative enactment is unconstitutional on its face, in that there is no set of circumstances under which the enactment is

constitutionally valid. *Bonner v City of Brighton*, 495 Mich 209, 223 n 26; 848 NW2d 380 (2014). "An as-applied challenge, to be distinguished from a facial challenge, alleges 'a present infringement or denial of a specific right or of a particular injury in process of actual execution' of government action." *Id.* at n 27 (citation omitted).

With respect to an as-applied constitutional challenge of MCL 750.237, "the threshold inquiry is whether MCL 750.237 regulates conduct that falls within the scope of the Second Amendment right as historically understood." *Deroche*, 299 Mich App at 308-309 (discussing the first prong of a two-pronged approach as adopted from the Sixth Circuit's opinion in *United States v Greeno*, 679 F3d 510, 518 [CA 6, 2012]). Relative to the threshold inquiry or first prong of the analysis, if the state demonstrates that the regulated activity falls outside of the Second Amendment's scope, the analysis can stop, as the activity is not protected by the Second Amendment. *Deroche*, 299 Mich App at 309, quoting *Greeno*, 679 F3d at 518. In regard to the second prong of the analysis, if a defendant's conduct falls within the scope of the Second Amendment, intermediate scrutiny is applicable. *Deroche*, 299 Mich App at 310. Under intermediate scrutiny, the government bears the burden of establishing that the challenged regulation serves an important, substantial, or significant interest and that there is a reasonable fit between the asserted interest or objective and the burden placed on an individual's Second Amendment right. *Id.*; *United States v Marzzarella*, 614 F3d 85, 97-98 (CA 3, 2010).

Returning to the first prong and the question whether the regulated conduct falls within the scope of the Second Amendment, the Court in *Deroche* elaborated:

> The Second Amendment protects a "law-abiding" person's right to bear arms in his or her home as a means of self-defense. A right to possess a handgun in one's home as a means of self-defense is a constitutional right that is at the core of Second Amendment protection.
>
> While Second Amendment rights are not unlimited, this conduct is protected. Aside from the statute at issue, defendant was not engaging in an unlawful behavior and there was no evidence to suggest that defendant possessed the handgun for an unlawful purpose. Further, it was not established that this is a case in which someone was unlawfully allowed to own or possess a handgun in the first instance. Additionally, the prosecution has failed to establish that the conduct at issue has historically been outside of the scope of Second Amendment protection. Given our earlier discussion, defendant's conduct fell within the protections of the Second Amendment. While the perceived danger associated with intoxicated individuals and handguns is real and important, these issues are addressed by analyzing the conduct under the second prong of the *Greeno* test as discussed below. [*Deroche*, 299 Mich App at 309-310 (citations omitted).]

In *United States v Sheldon*, 5 Blume Sup Ct Trans 337 (1829), the Supreme Court of the Territory of Michigan similarly observed:

> The constitution of the United States also grants to the citizen the right to keep and bear arms. But the grant of this privilege cannot be construed into the

right in him who keeps a gun to destroy his neighbor. No rights are intended to be granted by the constitution for an unlawful or unjustifiable purpose.

Here, while defendant generally possessed the gun in her own home as a means of self-defense, which ordinarily falls within the scope of the Second Amendment, there was indeed evidence that, as opposed to the circumstances in *Deroche*, defendant used the gun for an unlawful or unjustifiable purpose, i.e., she threatened and assaulted the complainant with the gun. Because there was evidence that defendant used the gun for an unlawful purpose, which would not be protected by the constitutional right to keep and bear arms, the trial court properly denied the pretrial motion to dismiss the PFWI charge and the motion for a directed verdict that was made after the close of the prosecution's case-in-chief. See *People v Riley (After Remand)*, 468 Mich 135, 139-140; 659 NW2d 611 (2003) ("In assessing a motion for a directed verdict of acquittal, a trial court must consider the evidence presented by the prosecution to the time the motion is made and in a light most favorable to the prosecution[.]").

Determining whether defendant's conduct fell within the scope of the Second Amendment for purposes of the post-trial motions becomes more difficult, given that defendant was acquitted on the felonious assault and domestic violence charges, thereby perhaps suggesting that the jury was not satisfied that the prosecution had proven beyond a reasonable doubt that defendant had actually brandished and pointed the gun at the complainant. However, we can only speculate as to the basis of the jury's verdict of acquittal on the felonious assault and domestic violence charges. First, the domestic violence charge did not require proofs associated with the gun, and it appears from the record that the charge related to the allegations that defendant hit and strangled the complainant. With respect to the felonious assault charge, which did require proof in this particular case that defendant used a gun to assault the complainant, perhaps the jurors simply concluded that the prosecution failed to establish that defendant intended to injure complainant or place her in reasonable apprehension of an immediate battery; a required element of felonious assault and covered by the trial court's instructions. *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).[2] Therefore, we cannot necessarily conclude that the jury found that no gun was pointed at the complainant simply on the basis of the acquittals.[3] And neither can we necessarily conclude that the jury fully accepted defendant's account of the events that transpired. Accordingly, even if we assumed that defendant's constitutional argument was generally valid and sound, under no circumstance can we hold that the evidence was *insufficient* to sustain the PFWI conviction, such that defendant could not be retried. Rather, at best from defendant's perspective, a jury would need to resolve in a new trial

---

[2] The acquittal on the felony-firearm charge is also not conclusively enlightening regarding whether defendant brandished a gun in complainant's direction, considering that the acquittal could simply have been based on the jury's rejection of the felonious assault charge, which was the predicate offense for the felony-firearm charge.

[3] Intentionally aiming a gun at or toward a person without malice is a misdemeanor. MCL 750.233(1). Accordingly, the mere act of pointing a gun at the complainant, even if it did not amount to felonious assault, was still unlawful and would not fall within the scope of Second Amendment protection.

factual issues bearing on the constitutional right to keep and bear arms. We therefore continue our analysis to determine whether defendant is entitled to a new trial.

Assuming for purposes of our review that defendant's conduct was consistent with her version of events and that the jurors fully believed her testimony, the question, still with respect to the first prong of the analysis, is whether that presumed conduct fell within the scope of the state and federal constitutional right to keep and bear arms. Aside from MCL 750.237, there was nothing unlawful about defendant moving the gun located in her home as a precautionary measure or for purposes of personal safety in an effort to avoid the possibility that the intoxicated and angry complainant would procure the gun and turn it against defendant. Therefore, we must shift gears to the second prong of the constitutional analysis. *Deroche*, 299 Mich App at 310. This inquiry entails examination of, in part, the strength of the state's justification for regulating or restricting the exercise of the constitutional right at issue. *Id.* at 309, quoting *Greeno*, 679 F3d at 518. For purposes of the analytical framework, we shall determine as a matter of law whether the constitutional right to keep and bears arms was violated on the basis of the testimony presented by defendant and other undisputed evidence. See *People v Knight*, 473 Mich 324, 343; 701 NW2d 715 (2005) (assuming proffered reasons for peremptory challenges were true, the Court determines as a matter of law whether the challenges violated the Equal Protection Clause); *State v Maas*, 991 P2d 1108, 1111 (Utah App, 1999) ("[W]hether a given set of facts gives rise to a constitutional violation is a matter of law.") If the answer is yes, a properly-instructed jury in a new trial would need to resolve underlying factual disputes about how the gun was utilized by defendant.[4]

With respect to the application of intermediate scrutiny under the second prong of the analysis, the governmental objective of protecting persons and society from an intoxicated individual who actually possesses a firearm is certainly substantial and important. *Deroche*, 299 Mich App at 307 (intoxicated individuals pose a serious danger to society if permitted to possess a firearm, as those individuals will have difficulty exercising self-control).[5] The extreme danger posed by a drunken person with a gun is real and cannot be over emphasized. In regards to whether there is a reasonable fit between the government's substantial and important interest in protecting society from gun-wielding, intoxicated individuals and the burden on the

---

[4] Although the trial court found that defendant waived any claim of instructional error, the court had noted a defense counsel objection to the instruction on the PFWI charge, but we cannot discern from the record the nature of that objection. Given our ultimate holding today, we shall proceed on the assumption that defendant preserved a challenge of the PFWI instruction.

[5] In *State v Richard*, 298 SW3d 529 (Mo, 2009), the Missouri Supreme Court addressed a Second Amendment challenge of a statute comparable to MCL 750.237, noting that the state's police power to preserve the health, welfare, and safety of its citizens through the regulation of harmful threats encompassed the authority to prohibit an intoxicated individual from possessing a loaded firearm, as such legislation was reasonable in light of the demonstrated threat to public safety posed by such an individual.

constitutional right to keep and bear arms, the *Deroche* panel concluded that there the infringement "was not substantially related to . . . [the] objective" of "preventing intoxicated individuals from committing crimes involving handguns." *Id.* at 311. The Court explained:

> We initially note that at the time of the officers' entry into the home, and at the time they were actually able to establish the level of defendant's intoxication, defendant's possession was constructive rather than actual. Thus, to allow application of this statute to defendant under these circumstances, we would in essence be forcing a person to choose between possessing a firearm in his or her home and consuming alcohol. But to force such a choice is unreasonable. As the facts illustrate, there was no sign of unlawful behavior or any perceived threat that a crime involving a handgun would be committed. . . . [T]he government's legitimate concern is not that a person who has consumed alcohol is in the vicinity of a firearm, but that the person actually has it in his or her physical possession.
>
> In conclusion, the government cannot justify infringing on defendant's Second Amendment right to possess a handgun in his home simply because defendant was intoxicated in the general vicinity of the firearm. [*Id.* at 311-312.]

Here, under defendant's version of events, she was not engaged in any unlawful behavior, but, as opposed to the facts in *Deroche*, defendant actually possessed the gun, albeit for a brief time. The prosecution's case was not predicated on constructive possession, and the jury was never instructed that possession could be constructive. However, we do not read *Deroche* to suggest that actual possession will defeat a Second Amendment claim in every conceivable circumstance. In the context of determining whether there exists a reasonable fit or substantial relationship between the state's interest and the burden on defendant's Second Amendment right, there needs to be a weighing of the possible harm or danger had defendant not moved the gun and the possible harm or danger that arose when defendant did move the gun. In other words, the issue becomes which of these two circumstances presented the greater threat to safety.

Initially, we note that this case did not present facts supporting a claim of or instruction on self-defense, which requires an honest and reasonable belief that death or great bodily harm is imminent. MCL 780.972(1)(a).[6] Further, defendant did not argue the legal defense of necessity, see *People v Hubbard*, 115 Mich App 73, 80; 320 NW2d 294 (1982); rather, her position was framed solely around the constitutional right to keep and bear arms. In weighing the possible harm or danger posed by the two situations, we conclude as a matter of law that it was defendant's act of handling the firearm while intoxicated that presented the greater threat to safety, as opposed to the hypothetical situation in which defendant did not move the firearm. There can be no reasonable dispute given the record that defendant was more intoxicated than the complainant, which was reflected in the PBTs, and defendant's level of intoxication was

---

[6] We note that our Supreme Court in *People v Dupree*, 486 Mich 693, 696-697; 788 NW2d 399 (2010), absent any discussion of the Second Amendment or Const 1963, art 1, § 6, held that self-defense is generally available to a defendant in challenging a charge of felon in possession of a firearm when supported by sufficient evidence.

significant; she had been drinking all day and into the night. Additionally, even under defendant's account of the events that transpired, emotions were running exceptionally high on the part of both defendant and complainant. Handling a firearm in a highly drunken and highly emotional state, even if briefly, posed a substantial danger to defendant herself, let alone the complainant who was nearby, of an accidental discharge or even an intentional discharge clouded by the alcohol. While it may be arguable that the danger in moving the gun as a precautionary measure was not so great, we conclude that the danger posed had the firearm not been moved was negligible; defendant's safety was not meaningfully increased by moving the gun. There was no testimony that the complainant had, at the time of the offense or previously, handled the gun in a threatening manner or had even threatened to use the gun against defendant. Indeed, there was no evidence indicating that the complainant had ever discharged a firearm or was familiar with discharging a gun. Defendant even testified that the complainant had asked her to teach her about using firearms, but defendant had never done so.

Additionally, defendant did not testify that, at the time of the offense, the complainant had physically harmed her or had threatened to physically harm her. Moreover, defendant testified that there had been many earlier occasions on which she and the complainant were intoxicated and embroiled in conflict and argument. Although the complainant had previously thrown a fishing rod and computer belonging to defendant, and there was testimony of an incident wherein complainant slammed a door on defendant's fingers, there was no evidence suggesting even a remote possibility that complainant would shoot defendant. We also note that, aside from the gun at issue, defendant had an extensive gun collection that was kept in the house.

Based on the undisputed facts and even assuming the claims made by defendant in her testimony were true, we cannot conclude that defendant is entitled to a new trial on the ground that her state and federal constitutional right to keep and bear arms was violated. Any impairment of defendant's constitutional right by outlawing her movement of the gun was substantially related to the important governmental interest in preventing intoxicated individuals from possessing firearms. Therefore, convicting defendant under MCL 750.237 and the circumstances presented survives or satisfies intermediate scrutiny. Reversal is unwarranted.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Michael J. Kelly

-10-