*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DARELL RAMON BROWN,

        Defendant-Appellant.

UNPUBLISHED
January 7, 2020

No. 347265
Oakland Circuit Court
LC No. 2018-268144-FC

Before: RONAYNE KRAUSE, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

Defendant was charged with one count of assault with intent to murder, MCL 750.83, one count of carrying a concealed weapon, MCL 750.227, and two counts of possession of a firearm in the commission of a felony (felony-firearm), MCL 750.227b. Following a motion by defendant, the trial court gave defendant $2,000 to hire an expert witness for his defense. Defendant subsequently sought an additional $3,000 required by the expert to prepare a report, assist defendant's attorney, and testify. The trial court denied the request. Defendant now appeals, as on leave granted,[1] the trial court's order denying his motion for additional funds for his expert. This Court vacates and remands for further proceedings.

## I. FACTUAL BACKGROUND

On the day of the incident, defendant went to a rehearsal for a play in which he was acting. The play was directed by the victim. After rehearsal concluded, defendant and the victim got into an argument, which devolved into a physical fight, over comments the victim had

---

[1] This Court initially denied defendant's application for leave to appeal. *People v Brown*, unpublished order of the Court of Appeals, March 7, 2019 (Docket No. 347265). Our Supreme Court, in lieu of granting leave to appeal, remanded this case for consideration as on leave granted and directed us to decide this case on an expedited basis. *People v Brown*, 503 Mich 1008; 924 NW2d 887 (2019).

made to defendant the previous night. The altercation seemingly ended when defendant's wife intervened, and both men walked to their vehicles. However, defendant then returned to the victim's vehicle before the victim left the parking lot. According to the victim, defendant placed his hand on the victim's vehicle, whereupon the victim reversed quickly before putting his car in drive to exit the parking lot. As the victim left the parking lot, defendant took out a gun and shot at the victim's vehicle three times. The fact that defendant shot at the victim's vehicle is undisputed for purposes of this appeal. However, defendant's wife asserted that the victim had not merely attempted to leave the lot, but rather attempted to hit defendant with the vehicle. Defendant likewise maintains that he shot at the rear tire of the victim's vehicle because he believed the victim was trying to hit him.

## II. PROCEDURAL BACKGROUND

The district court held a preliminary examination in which five witnesses provided testimony. In relevant part, the trial court qualified Specialist Steven Hendricks (Hendricks), an officer with the Southfield Police Department, as "an expert witness in firearms and firearm training." Hendricks photographed the bullet holes in the victim's vehicle and analyzed the photographs. He determined that the three bullet holes appeared to have entered the vehicle from different trajectories. He therefore deduced that either the vehicle had been moving or the shooter had been moving when the shots were fired. Hendricks clarified that he did not know which of the vehicle or shooter had been moving, nor did he know in which order the shots were fired. He further remarked that one of the shots might have missed the vehicle entirely "had it been a millisecond later." Hendricks opined that there were too many factors to be certain whether any of the bullets could have been "a kill shot," but he noted that one of the bullets "could potentially do quite a bit of damage if it – if it hit a person." Hendricks agreed with the prosecutor that the bullet holes "would be consistent with" the vehicle moving away from the shooter. He did not, however, express any opinion whether the vehicle *was* moving away from the shooter.

After defendant was bound over, defendant moved to appoint a ballistics expert for his defense. Defendant argued that he and his family had exhausted their resources retaining defense counsel and were therefore functionally indigent. Defendant complained that Hendricks should not have been qualified as an expert, whereas

> a ballistics expert has the experience, training, and scientific knowledge that the police officer that testified at the preliminary exam lacked. Most of all, a ballistics expert would help clear up facts at issue in this case. Also, a ballistics expert would show that [defendant] acted in self-defense.

Defendant expressly declined to explain in any greater detail how his proposed expert would be helpful, stating that he "would prefer not to reveal to the prosecutor any information regarding trial theories or the reasons for [his] use of an expert at this stage of the case" and that "it would be problematic if he had to reveal the purpose for the expert because it implicates potential violation of the attorney-client privilege, the work product doctrine, and the privilege against self-incrimination."

Over the course of several hearings, the trial court and prosecution repeatedly expressed disbelief that defendant and his family could afford to retain an attorney but could not afford to retain an expert. Nevertheless, the prosecution eventually conceded that defendant appeared to have "substantiate[d]" his "lack of funds." Defendant explained that his proposed expert would be able to help his case because:

> The ballistics expert will be able to show again, through his independent experiments, the angle of the bullet. That would be – like, that would be contrary to the expert from the preliminary exam, the trajectory, directionality of the bullets that would be contrary to the expert on the preliminary exam. . . . He is trained in – he does his – he does experiments – like I said, he told me how he would approach the case, your Honor.

Further discussion on the record suggested that defendant's proposed expert would receive the actual firearm used, perform experiments upon that firearm, and prepare a report.[2] The trial court observed to defendant that "some concerns" had been raised regarding the expert, including several other courts' refusals to qualify him, which "might be something that you need to address or maybe decide on somebody else." Defendant explained that at least one other expert had been contacted, but that expert was "not very helpful" and "didn't know how he could help."

Defendant's proposed expert's fee was discussed, and at one point defendant stated that the expert had "quoted [defendant] a deposit of $2,500 down" but had not provided a "quote total." Defense counsel offered to "call the expert and get a total." At the next hearing, defense counsel apparently submitted to the court an email from the expert "listing out his expenses and what he anticipates the fee would be." However, the contents of the email were not further discussed, and no copy of any such email can be found in the record. The trial court ultimately granted defendant's motion, but warned that it would "grant no more than $2,000 for this expert in total." Defendant did not object to that dollar amount. The trial court entered an order appointing Steven Howard (Howard) as defendant's ballistics expert and approving "$2,000 in total" in funds for defendant to pay Howard.

Approximately a month later, defendant filed a motion requesting an additional $3,000 for Howard. Defendant largely reiterated his previous position; but he added that the previously approved funds were inadequate to permit Howard to finish the report, prepare and assist defense counsel, and testify. Defendant contended that without his expert's ballistics testimony, he would be deprived of "the heart of this case" and denied a fair trial. Furthermore, without the additional funds, he would lack an expert altogether. Defendant provided an invoice from Howard showing that Howard had already exceeded the funds allocated.[3] However, defendant did not further explain the specific nature of Howard's expected testimony. The trial court held a

---

[2] The prosecution expressed concern that the expert might fail to prepare a report, to which the trial court responded that the expert would not be permitted to testify if he did not prepare a report, and "it's as simple as that."

[3] The invoice states the total bill to be $203.20, but the actual line items do add up to $2,203.20.

hearing at which it expressed skepticism that defendant had adequately shown himself to be indigent, and it stated that in its prior order "I did cap it off at $2,000.00." The trial court therefore denied defendant's request for additional funds. This appeal followed, and the trial court stayed the proceedings pending the outcome of this appeal.

## III. STANDARD OF REVIEW AND LEGAL PRINCIPLES

The "trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert witness" is reviewed for an abuse of discretion. *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006), citing MCL 775.15. "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012). A trial court abuses its discretion if it fails to exercise discretion when called upon to do so. *Rieth v Keeler*, 230 Mich App 346, 348; 583 NW2d 552 (1998). An abuse of discretion also occurs when "a trial court premises its decision on an error of law." *People v Parker*, 319 Mich App 664, 669; 903 NW2d 405 (2017); see also *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016). "Questions of constitutional and statutory interpretation present questions of law reviewed de novo." *People v Hall*, 499 Mich 446, 451; 884 NW2d 561 (2016).

"[W]hen a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." *Ake v Oklahoma*, 470 US 68, 76; 105 S Ct 1087; 84 L Ed 2d 53 (1985). Providing an indigent defendant with a fair opportunity to present his or her defense requires the state to provide the defendant with "an adequate opportunity to present their claims fairly within the adversary system," and "the basic tools of an adequate defense." *Id*. at 77 (citations and quotation marks omitted). When an indigent defendant requests an expert witness, he or she is entitled to an expert witness paid for by the state if he or she can "show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *People v Kennedy*, 502 Mich 206, 228; 917 NW2d 355 (2018) (citation and quotation marks omitted). However, a defendant is not entitled to an expert merely upon request. *Id*. at 227. The defendant must show "more than a mere possibility of assistance" from the expert, must explain "why the particular expert is necessary," and must "provide the court with as much information as possible concerning the usefulness of the requested expert to the defense's case." *Id*. (internal quotation omitted).

## IV. INDIGENCY

As an initial matter, the prosecution and trial court repeatedly expressed doubt about defendant's indigency, relying significantly on the fact that defendant and his family were able to accumulate the funds with which to retain counsel. It is unreasonable to presume that purely because a person was able to find the money to retain an attorney, they must necessarily be able to find the additional money to also retain an expert. See, e.g., *People v Propp*, ___ Mich App ___, ___ n 2; ___ NW2d ___ (2019) (Docket No. 343255, slip op at p 3). Furthermore, the prosecution apparently conceded at the hearing on defendant's motion to appoint Howard that defendant's indigency had been properly substantiated. Therefore, a majority of this panel deems defendant's indigency to be established.

-4-

# V. EXPERT NECESSITY

Defendant argued that an expert witness was necessary in this case to support his argument of self-defense. A defendant can use deadly force, like a gun, in self-defense if he or she has "an honest and reasonable belief that death or great bodily harm is imminent." *People v Wilder*, 307 Mich App 546, 562; 861 NW2d 645 (2014). The gravamen of the matter is that if the victim was driving toward defendant when the shots were fired, defendant may have had an honest and reasonable belief at the time that death or great bodily harm was imminent. In contrast, if the victim was driving away from defendant when the shots are fired, it is highly unlikely defendant could have had an honest and reasonable belief that death or great bodily harm was imminent.

Defendant's motion provided the trial court with very little explanation of exactly how Howard's testimony would help him or of the probable substance of that testimony. Defendant's references at the hearing to the trajectory, directionality, and angle of the bullets were only marginally less vague. Defendant's concerns about not disclosing trial strategy are sound and appropriate, even if the expert's ultimate conclusions or report would eventually be discoverable. Nevertheless, the courts need not fund a "fishing expedition," so they must be given some basis for being able to conclude that an expert will "reasonably probably" be useful. Defendant's explanations to the trial court were disappointing in this regard. Nevertheless, it is possible to make a reasonably likely guess at the substance and significance of Howard's proposed testimony.

Defendant first argues that Howard could rebut testimony from Hendricks. However, Hendricks never testified that the victim *was* driving away from defendant when the shots were fired. Rather, he testified only that the bullet holes were *consistent with* the victim driving away. Hendricks explicitly testified that he had no way to know the order in which the shots were fired, or even whether it was the vehicle or the shooter that was moving. Furthermore, Hendricks never rendered an opinion that any of the bullet holes demonstrated an intent to kill, but only that the victim could have been injured if he had been struck. The fact that the vehicle was in motion is undisputed, and the fact that bullets tend to be harmful to living beings is obvious. Therefore, defendant's concern with rebutting Hendricks's testimony is excessive.

In contrast, given the known facts and the obvious nature of defendant's self-defense argument, Howard's probable testimony must be to the general effect of either (1) that the victim's vehicle was travelling toward defendant when the shots were fired, rather than away from defendant; or (2) that the bullet trajectories were inconsistent with an intent to kill the victim. In contrast to *Propp*, in which there was no record evidence supporting the defendant's theory of exoneration, the record here *does* contain evidence that, if believed by the trier of fact, could tend to show that defendant shot in self-defense and without intent to kill. See *Propp*, ___ Mich App at ___ (slip op at pp 5-6). Assuming an expert could competently testify as to the direction in which the car was travelling when the shots were fired, or that the bullet trajectories

were inconsistent with an intent to kill,[4] that testimony would obviously significantly bolster defendant's self-defense claim, irrespective of whether defendant expressly provided a specific summary. The courts generally avoid elevating form over substance. See *Hurtford v Holmes*, 3 Mich 460, 463 (1855); *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 582; 808 NW2d 578 (2011). Presuming Howard would be qualified and his testimony admitted, it is at least reasonably possible that Howard's expert testimony would be of assistance to defendant and that a denial of Howard's assistance could result in a fundamentally unfair trial. See *Kennedy*, 502 Mich at 228.

## VI. HOWARD'S NECESSITY

However, even when indigent defendants have demonstrated that they are entitled to expert witnesses, they only have a constitutional right to a "competent" expert, not the right to choose any expert witness that they wish.[5] See *Ake*, 470 US at 83. The *Ake* Court compared an indigent defendant's right to an expert witness provided at the court's expense to the right to appointed counsel, and the Court left "the decision of how to implement this right" to the states. *Id*. Michigan courts have not specifically set forth standards courts should follow when determining how much money to give an indigent defendant to hire an expert witness, but by analogy, an indigent defendant "receiving counsel at public expense" is "not entitled to choose his attorney." *People v Ackerman*, 257 Mich App 434, 456; 669 NW2d 818 (2003) (quoting *People v Ginther*, 390 Mich 436, 441; 212 NW2d 922 (1973)). Accordingly, an indigent defendant is not entitled to choose any expert he or she wishes when the state is paying for the expert witness.

Defendant does appear to have looked into the possibility of alternative expert witnesses in ballistics. The record only indicates that defendant inquired of one alternative expert, but I will give defendant the benefit of the doubt that no other ballistics experts are realistically available to him. Nevertheless, when an indigent defendant has established that he or she is entitled to an expert witness at public expense and seeks additional funds for an expert witness of his or her choosing, the defendant must show that denial of the particular expert witness "would result in a fundamentally unfair trial." *Kennedy*, 502 Mich at 228 (citations and quotation marks omitted). My concurring colleague and I agree that defendant has demonstrated the necessity for *an* expert witness, but cannot go so far as to agree that defendant has established the necessity for *Howard specifically*.

I have some doubt whether a denial of Howard's assistance *would* result in a fundamentally unfair trial. Notably, testimonial evidence from eyewitnesses will likely be introduced, the forensic evidence against defendant is weaker than he appears to believe, and this will not be a "battle of the experts." Hendricks implicitly testified that he could not determine in

---

[4] I share the prosecution's serious doubt that any expert, especially Howard, *could* competently draw such conclusions. However, that is a separate analysis. See footnote 7.

[5] As I will discuss further, the obvious corollary is that a defendant does not have a right to an incompetent expert.

which direction the victim's car was travelling, although that testimony falls far short of affirmatively bolstering defendant's defense. Cf. *Propp*, ___ Mich App at ___ (slip op at pp 7-8). I also share the trial court's concerns regarding Howard's qualifications. Trial courts are not gatekeepers of absolute truth or scientific acceptance, but the courts are nevertheless charged with determining the methodological soundness of an expert's opinion. *People v Muhammad*, 326 Mich App 40, 52-53; 931 NW2d 20 (2018). A defendant is not entitled to unreliable expert testimony. See *People v Dobek*, 274 Mich App 58, 93-96; 732 NW2d 546 (2007). Inadmissible expert testimony could not possibly be "of assistance to the defense." *Kennedy*, 502 Mich at 228. When determining the reasonableness of a fee allocation and whether a defendant's trial will be unfair in the absence of additional funding, I think it proper to take such concerns into account.

I have examined Howard's curiously formatted curriculum vitae, and I was able to verify that he was qualified as an expert in some Michigan cases, although not without some difficulty, especially regarding his prepared reports or the lack thereof.[6] The prosecution contended, although I have been unable to verify, that Howard was precluded from testifying in at least one case because the trial court found Howard to be a "fraud." Finally, Howard's C.V. is unhelpfully vague regarding his qualifications, suggesting that he has been considered a "firearms/weapons/ballistic/GSR/knife expert" many times, but without obvious explanation of what such expertise means or how he came by that expertise. I do not believe it was unreasonable for the trial court to have concerns regarding Howard's qualifications and the potential for his testimony to be found inadmissible.[7]

Furthermore, defendant's motion for expert witness funds shows that defendant had communicated with Howard, and it implies that defendant had some understanding of Howard's expected testimony. The motion noted that Howard was "aware of [defendant's] financial situation and has agreed to assist him in this case on an appointment bases [sic] if allowed by the court," making it difficult to believe that no discussion of Howard's fees had occurred. Indeed, the transcripts of the several motion hearings show that defendant had already been quoted a mere *deposit* of $2,500, defendant was aware that the total cost would be higher, and defendant

---

[6] See *People v George*, unpublished per curiam opinion of the Court of Appeals, issued July 3, 2018 (Docket No. 335641, op at pp 7-8); *People v Butler*, unpublished opinion of the Court of Appeals, issued August 27, 2015 (Docket No. 319548, op at pp 3-6). It also appears that Howard was at most a *proposed* expert in one case he cites. See *People v Herndon*, unpublished per curiam opinion of the Court of Appeals, issued December 20, 2005 (Docket No. 256120, op at pp 2-3).

[7] I emphasize, however, that an inquiry into the necessity and reasonableness of an expert's fees is not an inquiry into scientific reliability under MRE 702. Thus, notwithstanding the reasonableness and relevance of a trial court's *concerns* regarding an expert's *probable* qualifications, care must be taken to avoid conflating the two inquiries. Howard's qualifications have not *actually* been vetted in this matter, and no presumption should be made in advance that he will ultimately not be qualified in this matter. Either party may bring a proper motion to examine the qualifications and methodology of a putative expert before trial.

had been provided with some kind of further fee schedule. I cannot find a copy of this fee schedule in the record, but it was apparently provided to the trial court. Thus, defendant and the trial court must both have known from the outset that $2,000 would be insufficient.

Unfortunately, defendant failed to articulate any reason why Howard should command such a price, offer an estimated total to the trial court, or object to the trial court's award. However, the trial court was seemingly aware that its initial award would be insufficient, and, equally unfortunately, the trial court provided almost no record of its reasoning for the amount of its initial award. More importantly, the trial court apparently rejected defendant's request for additional funds entirely on the grounds that it had previously imposed a $2,000 cap and its suspicions regarding defendant's indigency. As discussed, defendant's indigency is properly established. Because an indigent defendant may properly seek additional funds for an expert, the trial court erred in rejecting defendant's request on the basis of having capped its initial award. A trial court necessarily abuses its discretion if its decision is premised on an error of law or a failure to exercise its discretion. I respectfully disagree with my dissenting colleague primarily because notwithstanding the deficiencies in defendant's requests for funding, the trial court's denial of subsequent funds, on the basis of the trial court's stated reasoning, was erroneous.

## VII. HOWARD'S AFFIDAVIT

After the trial court denied defendant's motion for additional funds to pay Howard, defendant attached an affidavit from Howard to his motion to stay proceedings. This Court generally may only consider "what was properly presented to the trial court before its decision on the motion." *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003). Because Howard's affidavit was not presented to the trial court until after the trial court denied defendant's motion for additional funds, it need not be considered on appeal. See *id*. However, the trial court's analysis of the affidavit is entirely proper and correct. The trial court observed that Howard's affidavit appeared to be more of an unprofessional rant than an accounting or explanation. The trial court found it "offensive," and I am inclined to agree. Indeed, the affidavit consists largely of invective and thus tends to support the trial court's doubts regarding Howard's qualifications to render expert testimony. Had Howard's affidavit been submitted to the trial court at the outset, it would be difficult to regard the trial court's award as either arbitrary or improper. See *People v Williams*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 341703, slip op at pp 3, 5).

## VIII. CONCLUSION

A majority of this panel agrees that defendant adequately established his need for an expert, that defendant adequately established his indigency, that defendant inadequately supported his request for expert witness fees for Howard in particular, and that the trial court inadequately supported either the amount of its initial award or its refusal to grant additional funds. In light of the seriousness of the crime with which defendant is charged, a majority of this panel therefore concludes that the interests of justice require us to vacate the trial court's decision not to grant defendant additional funds, and remand for further consideration.

If defendant again seeks additional funding on remand, he must provide to the trial court a proper and reasonably complete explanation of the general nature of Howard's expected

testimony, how defendant expects that testimony to benefit his defense, why Howard specifically is necessary, why Howard should command such a price, and why it is reasonably likely that Howard will be qualified at trial to provide his expected testimony. The prosecution shall be entitled to a reasonable opportunity to respond. On remand, the trial court shall take defendant's indigency as established and shall provide on the record or in a written order an explanation of why it either grants or denies additional funds for Howard, and it may not rely on the fact that it previously stated a cap on those funds. However, nothing in this opinion should be construed as directing or expecting the trial court to arrive at any particular outcome.

Under the circumstances, it is unnecessary to consider defendant's argument concerning the effectiveness of his counsel.

The trial court's order is vacated, and the matter is remanded for further proceedings. We retain jurisdiction.

/s/ Amy Ronayne Krause

# Court of Appeals, State of Michigan

# ORDER

People of MI v Darell Ramon Brown

Docket No. 347265

LC No. 2018-268144-FC

Amy Ronayne Krause
Presiding Judge

Patrick M. Meter

Cynthia Diane Stephens
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. The proceedings on remand are limited to this issue as stated in the accompanying opinion.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

/s/ Amy Ronayne Krause

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

January 7, 2020
Date

Chief Clerk