*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RUDY FRANK FABELA,

        Defendant-Appellant.

UNPUBLISHED
June 23, 2022

No. 337365
Allegan Circuit Court
LC No. 16-019935-FH

## ON REMAND

Before: MURRAY, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

This case returns to this Court for reconsideration of defendant's challenge to the trial court's order imposing mandatory lifetime registration under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*., in light of *People v Betts*, 507 Mich 527; 968 NW2d 497 (2021). We do so now, and affirm.

## I. FACTS

When this case was previously before this Court, we summarized the underlying facts as follows:

> In approximately 2012, defendant met and became close friends with Shandra Dominguez at their mutual workplace. Ms. Dominguez testified that defendant became like a brother to her and that, in September 2015, he moved into the home where she resided with her four children. Ms. Dominguez testified that defendant was also close with her children, seemingly serving as a father figure to her daughter CD, who had been struggling with the absence of her father since he had been deported six years earlier.

> CD testified that her relationship with defendant became romantic in November 2015, when CD was 15 years old and defendant was 31 years old.

According to CD's testimony, she and defendant had sexual intercourse approximately ten times between November 2015 and January 2016. In November 2015, CD learned that she was pregnant. Ms. Dominguez testified that she learned of CD's pregnancy in January 2016, and although CD refused to identify the father, Ms. Dominguez confronted defendant. Defendant denied being the father; however, he immediately moved out of the family's residence, quit his job, and cut off all communication with Ms. Dominguez. Shortly thereafter, Ms. Dominguez discovered a cell phone she recognized as belonging to defendant hidden in CD's closet. She testified that the phone contained a video of defendant and CD kissing and declaring their love for each other. On approximately January 7, 2016, Ms. Dominguez reported defendant to the Kentwood Police Department. Although Ms. Dominguez forbade CD from seeing defendant, CD admitted that she continued to see him.

On February 3, 2016, CD took the bus to school, where defendant immediately picked her up in his vehicle. CD testified that she intended to run away with defendant and that the two had sexual intercourse that night and the following morning. Further, CD testified that she loved defendant and that he did not force her either to leave her home or to have a sexual relationship with him. Detective Kelly Baldwin of the Kentwood Police Department testified that on February 4, 2016, she investigated a missing person report regarding CD. Detective Baldwin stated that, after finding CD at a movie theater, she seized CD's clothing for inspection. Ann Hunt and David Hayhurst, forensic scientists at the Michigan State Police laboratory, both testified that CD's underwear tested positive for seminal fluid matching defendant's DNA.

Defendant was charged with two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, taking place on or about February 4, 2016. The charges against defendant proceeded to trial, and the jury ultimately found him not guilty of two counts of CSC-I, but guilty of two counts of the lesser included offense of CSC-III, MCL 750.520d(1)(a). The trial court sentenced defendant to concurrent terms of 51 to 180 months in prison for each conviction, with 85 days of sentence credit for time served. [*People v Fabela*, unpublished per curiam opinion of the Court of Appeals, issued June 26, 2018 (Docket No. 337365), p 1-2.]

Defendant appealed to this Court challenging his convictions and his sentence, including a challenge to mandatory lifetime registration under SORA, which defendant contended was cruel or unusual punishment. This Court affirmed defendant's convictions and sentence, including the mandatory registration under SORA based upon the prevailing authority at that time, concluding that defendant's mandatory SORA registration was not cruel or unusual punishment. *Fabela*, unpub op at 4. We remanded the matter to the trial court, however, for correction of the judgment of sentence to reflect the proper amount of time served.

Defendant applied for leave to appeal to our Supreme Court, which held defendant's application in abeyance pending its decision in *Betts*. *People v Fabela*, ___ Mich ___; 931 NW2d 307 (2019). Thereafter, in lieu of granting leave to appeal, the Supreme Court vacated Part II(A)

of this Court's opinion, in which we rejected defendant's contention that mandatory registration under SORA was cruel or unusual punishment, and remanded the case to this Court for reconsideration in light of *Betts*. In all other respects, the Supreme Court denied defendant's application for leave to appeal to that Court. *People v Fabela*, ___ Mich ___; 969 NW2d 63 (2022).

## II. DISCUSSION

Defendant contends that his mandatory lifetime registration requirement under SORA is unconstitutional because it amounts to cruel and/or unusual punishment. We disagree.

As this Court previously found, *Fabela*, unpub op at 2, defendant failed to raise this issue before the trial court, and the issue therefore is unpreserved. See *People v Bass*, 317 Mich App 241, 272; 893 NW2d 140 (2016). We review unpreserved claims of constitutional error for plain error affecting the defendant's substantial rights, meaning a clear or obvious error affecting the outcome of the lower court proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018), quoting *Carines*, 460 Mich at 763-764.

The United States Constitution prohibits cruel *and* unusual punishment, US Const, Am VIII, whereas the Michigan Constitution prohibits cruel *or* unusual punishment. Const 1963, art 1, § 16. As a result, "if a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (quotation marks and citation omitted). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Id*. A facial challenge to the constitutionality of a statute is "a claim that a legislative enactment is unconstitutional on its face, in that there is no set of circumstances under which the enactment is constitutionally valid," *People v Wilder*, 307 Mich App 546, 556; 861 NW2d 645 (2014), while an "as-applied challenge . . . alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution of government action." *Id*. (Quotation marks and citation omitted). Defendant is asserting an as-applied challenge to the SORA registration requirements. A party challenging the constitutionality of a statute has the burden of overcoming the presumption that the statute is constitutionally sound. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009).

The Legislature enacted SORA, in part, to protect the public by requiring a person who has committed "an offense covered by this act" to register in compliance with the act. MCL 28.721a.[1] Defendant in this case was convicted of two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a). The Legislature defined CSC-III as a Tier III offense subject to the reporting requirements of SORA. See MCL 28.722(v)(*iv*). As a result, defendant is subject to the reporting requirements of SORA.

---

[1] For ease of reference, we cite the current version of SORA.

When this case was before this Court previously, defendant contended that his mandatory registration under SORA amounted to cruel or unusual punishment. We disagreed, observing that this Court had rejected that argument in previous cases. *Fabela*, unpub op at 2. We noted that the Michigan Legislature enacted SORA for the purpose of protecting the public, and that the SORA registration requirements were not considered punishment. *Id*. at 3. This determination was in keeping with then-binding authority, MCR 7.215(J)(1), that SORA's registration requirements did not constitute a punishment. See, e.g., *People v Bosca*, 310 Mich App 1, 60; 871 NW2d 307 (2015), rev'd in part ___ Mich ___; 969 NW2d 55 (2022); *People v Fonville*, 291 Mich App 363, 381; 804 NW2d 878 (2011). This Court also had rejected the contention that increased burdens imposed after the amendment of SORA in 2011 amounted to punishments that were cruel or unusual. See *People v Tucker*, 312 Mich App 645, 683; 879 NW2d 906 (2015). Because the registration requirements were determined not to be punishment, they could not be cruel or unusual punishment. See *id*.

In *Betts*, however, our Supreme Court determined that the 2011 amendments to SORA made the reporting requirements of the statute punitive, and those requirements therefore are punishment. See *Betts*, 507 Mich at 548-562. The Court further determined that because the amendments to SORA made it punitive, the retroactive application of the 2011 amendments to SORA in that case violated the prohibitions against ex post facto laws. *Id*. at 562. The Court specifically stated, however, that its holding did not affect the prospective application of the 2011 amendments to SORA. *Id*. at 563. More recently, this Court has held that the 2021 version of SORA also constitutes punishment.[2] *People v Lymon*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 327355), slip op at pp 11-18.

Unlike *Betts*, this case does not involve ex post facto application of the requirements under SORA. However, our Supreme Court in *Betts* rejected the previously-held view that SORA reporting requirements are not punishment, which was the foundation for the conclusion that the requirements could not be cruel or unusual punishment. See, e.g., *Tucker*, 312 Mich App at 683. That determination thus is relevant to the discussion of defendant's challenge to the SORA reporting requirements. On remand, defendant again argues that SORA amounts to a punishment, and as applied to him constitutes cruel and/or unusual punishment, violating both the Michigan and United States constitutions. But although SORA's registration requirement as amended in 2011 is a criminal punishment, *Betts*, 507 Mich at 548-562, defendant in this case has not demonstrated that SORA's mandatory lifetime registration requirement is unconstitutional as applied to him in this case.

To determine whether a punishment is cruel or unusual, this Court considers whether the punishment is "unjustifiably disproportionate" to the offense committed by considering (1) the severity of the sentence and the gravity of the offense, (2) the penalty compared to penalties for other crimes under Michigan law, (3) the penalty compared to the penalty for the same offense imposed in other states, and (4) whether the penalty imposed advances the goal of rehabilitation. *People v Bullock*, 440 Mich 15, 30, 33-34; 485 NW2d 866 (1992).

---

[2] However, we are only addressing the 2011 version of SORA in this matter.

Regarding the severity of the sentence compared with the gravity of the offense, defendant was convicted of CSC-III involving a minor and stemming from a relationship he cultivated with the minor while he was a guest in her family's home and acting to some extent as a parental or authority figure. The Legislature has determined that CSC-III warrants a maximum penalty of 15 years in prison. MCL 750.520d(2). Under SORA, defendant is required, as a result of this offense, to register as a sex offender for the rest of his life. Although potentially longer in duration than the maximum term of imprisonment, and although imposing serious restrictions on where a registrant can live or work, sex offender registration imposes significantly less loss of liberty than confinement in prison. We conclude that lifetime registration, however harsh it might be, is not *unduly* harsh considering the gravity of defendant's crime and as compared with the severity of the statutory punishment for this offense.

Regarding this factor, defendant directs this Court's attention to *People v Dipiazza*, 286 Mich App 137; 778 NW2d 264 (2009), in which the defendant was an 18-year-old boy who had a consensual sexual relationship with a 14-year-old girl. The defendant in that case was adjudicated under the Holmes Youthful Trainee Act (HYTA) for attempted CSC-III. He was sentenced to probation and also required to register under SORA for 10 years. On appeal in that case, this Court found the facts to be less serious because the defendant and the victim were close in age, the relationship was consensual, the victim's parents were aware of the relationship and approved of it, and the defendant and the victim eventually married. *Id*. at 154. This Court found that under the circumstances of that case, the 10-year reporting requirement under SORA was cruel or unusual because the registration penalty, as applied to the defendant in that case, was unique in Michigan, the goal of rehabilitation was not being served in that case, and the defendant was suffering negative effects from complying with SORA registration.

As discussed in our earlier decision in this case, however, the facts here are readily distinguishable from *Dipiazza*:

> Far from the teenage defendant involved in a sexual relationship with his girlfriend four years his junior, defendant in this case was 31 years of age when he engaged in a sexual relationship with a 15-year-old living in the same household. More significantly, defendant has been convicted and was not adjudicated under—nor was he eligible to be adjudicated under—the HYTA. Accordingly, *Dipiazza* is inapposite. To the extent that defendant emphasizes that his relationship with CD was consensual, MCL 28.722(w)(*iv*) provides that, even if a victim consents to a sexual relationship, CSC-III remains a Tier III offense if the defendant is more than four years older than his or her victim. Accordingly, the Legislature has clearly conveyed its intent that persons, such as defendant, who are more than four years older than a victim are subject to SORA registration requirements. [*Fabela*, unpub op at 3-4 (footnote omitted).]

Additionally, this Court has recently found sex offender registration to be cruel or unusual as applied to persons convicted of crimes that lack a sexual component and are not sexual in nature. *Lymon*, ___ Mich App at ___, slip op at pp 18-22. Implicit in this Court's holding was the significant qualitative distinction between sex offenses, like those at issue in this case, and other kinds of offenses.

Next, comparing defendant's mandatory registration under SORA to the penalties for other offenses in Michigan, we observe that SORA registration is not the only mandatory penalty in Michigan law, nor is SORA registration mandatory only for CSC-III convictions. Also, the circumstances surrounding criminal sexual conduct are themselves distinguishable from other offenses, often involving underage victims targeted by adults who are using a position of trust within a household to victimize a minor. We conclude that SORA's lifetime registration requirement is not without justification in the circumstances of this case. We also conclude that lifetime registration for sex offenders in Michigan is not unique to this state, given that other states have comparable requirements[3] applicable to persons in those states engaging in similar conduct to that of defendant in this case.

Regarding the goal of rehabilitation, we acknowledge that SORA's contribution toward rehabilitation is uncertain. See *Betts*, 507 Mich at 560-562. However, we do not find it to be unjustifiably disproportionate as applied to defendant because SORA registration may have a deterrent effect on his behavior. Defendant has presented nothing in the way of demonstrating that SORA registration generally undermines rehabilitation, though this might at some point prove to be the case. In any event, to the extent there are genuine disagreements in what might be shown by ongoing research, we are not an appropriate forum in which to resolve those disputes. See *Chapin v A & L Parts, Inc*, 274 Mich App 122, 127; 732 NW2d 578 (2007) (opinion by DAVIS, J.). We therefore conclude that SORA's lifetime registration requirement is not unjustifiably disproportionate as applied to the facts of defendant's offense, and that defendant failed to demonstrate that the requirements of SORA, as applied to him, plainly violate the prohibition against cruel or unusual punishments under Michigan's constitution. See *Carines*, 460 Mich at 763. Because he failed to demonstrate a plain constitutional error as applied to him, he also fails to establish that the statute is facially invalid. See *Bonner v City of Brighton*, 495 Mich 209, 223; 848 NW2d 380 (2014) (recognizing that a facial challenge will fail if a particular factual scenario would sustain the statute).

Defendant also challenges on remand the constitutionality of the trial court's decision to require him to submit to lifetime electronic monitoring. Defendant did not raise this issue in his original brief on appeal, and instead raises this issue before this Court for the first time in his supplemental brief following remand. The Supreme Court's remand order to this Court vacated Part II(A) of this Court's opinion, which addressed defendant's challenge that the reporting requirements of SORA were cruel or unusual, and denied defendant leave to appeal "[i]n all other respects." Because this claim of error is beyond the scope of our Supreme Court's order on remand, it is not properly before us and we therefore decline to address it. See *People v Traver*, 328 Mich App 418, 426; 937 NW2d 398 (2019).

Affirmed.

/s/ Christopher M. Murray
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola

---

[3] Defendant acknowledges that other states have enacted sex offender registration requirements.