*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MIGUEL ANTONIO MANCE,

Defendant-Appellant.

UNPUBLISHED
March 19, 2020

No. 346683
Oakland Circuit Court
LC No. 2018-265776-FC

Before: TUKEL, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of two counts of assault with intent to commit murder (AWIM), MCL 750.83, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to 15 to 40 years' imprisonment for the AWIM convictions and two years' imprisonment for each felony-firearm conviction. We affirm.

Two teenage brothers, JL and TL, met with a teenage friend, LA, and drove to a location where they picked up defendant. LA intended to sell some marijuana to defendant. The four individuals then drove to an apartment complex where they parked. JL sat in the driver's seat, TL sat in the passenger seat, LA sat in the backseat behind JL, and defendant sat in the backseat behind TL. In the backseat, there was an exchange of money for marijuana between LA and defendant. LA quickly surmised that the money that defendant handed him was counterfeit. According to LA, he turned toward defendant to confront him, but defendant shot him before LA could say anything. LA was hit in the arm by a bullet. LA testified that he then panicked and leaned over, at which point defendant shot him a second time, striking LA in his rib cage and causing paralysis. LA testified that he never shot at defendant and that he did not even have a gun in his possession.

JL testified that he heard a shot ring out when JL was about to send a reply text to his mother. The shot startled JL and was completely unexpected. JL was unsure from which direction the gunshot came, nor could he judge its distance. As he attempted to gauge the situation, he heard a few more gunshots seconds later. JL testified that "the car was just rocking back and forth." JL stated that he looked into the backseat to see what was going on, but he did not see anyone. He

noticed that the rear passenger-side window had been shot out, that there was a bullet hole in the front windshield between where the brothers were sitting, and that there was a bullet hole in TL's seatbelt. According to JL, he pulled TL, who was in shock, out of his seatbelt and through the driver's side door, and the two brothers then ran from the scene.

TL testified that he heard gunshots while looking at his phone. TL claimed that he went into "shock mode" and "froze." TL asserted that he could feel air moving by his right ear, suggesting that a bullet whizzed by his head. TL heard someone in the backseat cry out in pain, but he did not look in the backseat.

LA called 911, and responding police officers found him in the backseat on the driver's side of the car. LA seemed to be in pain according to police, and he told them that he could not feel his legs. A deputy testified that LA was having trouble speaking, but he was able to tell police that he had been shot by defendant. There was police testimony that no weapons, no ammunition, and no shell casings were found in the vehicle. Defendant used a revolver, which do not eject shell casings, and LA had been seen in the past with a semi-automatic gun, which is a weapon that does eject shell casings. LA was treated by paramedics and then taken to the hospital, where it was determined that he had a fractured arm and was paralyzed. JL and TL later returned to the crime scene, learned that LA was at the hospital, and then went to the police station.

Defendant testified on his own behalf and gave a very different account with respect to what occurred in the car. Defendant acknowledged that he was carrying a revolver and that he was trying to rid himself of some counterfeit money by using it to purchase marijuana from LA. Defendant contended that both he and LA indicated to each other that they were carrying firearms. After defendant and LA exchanged the marijuana for the counterfeit money, defendant noticed that LA was recounting and closely examining the money. According to defendant, defendant attempted to exit the car but LA grabbed him by the sleeve, pulled out a gun, and shot past defendant's face. Defendant testified that LA did not intend to hit defendant and demanded to know where defendant was going with LA's marijuana. Defendant claimed that he then reached for his own gun, which became caught in his sweatshirt as he was removing the gun from a holster, and discharged the gun twice through his sweatshirt. He asserted that he was not trying to strike LA. Defendant testified that the car was shaking and that he fired two more shots upward and toward the front of the car just as a warning to JL and TL not to come after defendant. He maintained that the brothers' heads were down when the warning shots were fired.[1] Defendant

_____

[1] There was evidence that the B-pillar between the front and rear doors on the passenger side of the car had damage consistent with being struck by a bullet. And there was no dispute that the rear window of the passenger side of the car had completely shattered. There was police testimony that the damage to the B-pillar and rear window indicated that it was caused by a projectile coming from the inside the car; the shattered glass from the window was found outside the car. Defendant argued that this evidence was consistent with LA's shooting past defendant's face from the driver's-side backseat. The prosecution argued that only one bullet—defendant's third shot—went through the front windshield, that defendant's fourth shot hit the B-pillar as defendant was swinging around after having first shot LA twice and then through the windshield, and that the fourth bullet careened off the B-pillar and shattered the backseat window.

-2-

stated that LA then took a second shot at defendant but missed. Defendant testified that he fired his gun inside the car to protect himself so that he could safely escape the vehicle. Defendant ran from the car, lay in a bush, reloaded his firearm, and then began walking home. Upon arrest and interrogation by police, defendant gave various and at times conflicting accounts of what occurred. At one point, he agreed that LA did not have a gun and indicated that he saw no gun. At another time, defendant stated that LA indeed had a gun, but defendant said nothing about LA's having fired the weapon. Eventually, defendant claimed that LA had a gun and shot in defendant's direction.

At trial, the jury was presented with six counts to consider. There were two charges of AWIM with respect to the shooting of LA and the shot that just missed TL. There were two accompanying felony-firearm charges. The jury was also instructed that it could consider the lesser offense of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84. Furthermore, the jury considered the crime of AWIGBH in connection to JL, without any instruction on a lesser offense. And there was an associated felony-firearm charge with the AWIGBH count. Defendant argued self-defense as to all the charges; he did not argue mitigating circumstances, i.e., that there was adequate provocation that would have made a reasonable person lose control without sufficient time to regain control (heat of passion). The trial court instructed the jury on the principles applicable to self-defense—there was no heat-of-passion, adequate-provocation instruction. The court also instructed the jury that the prosecutor had the burden to prove beyond a reasonable doubt that defendant did not act in self-defense. The jury ultimately convicted defendant of two counts of AWIM and three counts of felony-firearm, but it found defendant not guilty of AWIGBH in relation to JL. Defendant appeals by right.

On appeal, defendant first argues that there was insufficient evidence to support the AWIM convictions. Defendant contends that there was insufficient evidence to show that he had an intent to kill. He claims that the evidence revealed that he wielded and fired his gun recklessly. Defendant also argues that the evidence was inadequate to establish that had a death occurred, it would have risen to the level of murder. He further asserts that there were mitigating circumstances showing that he was acting under adequate provocation—being shot at by LA— that would have made a reasonable person lose control without sufficient time to regain control before acting, in which case he committed, at worst, AWIGBH. Defendant additionally maintains that the evidence indicated that he acted in an honest and reasonable belief that he needed to employ deadly force to prevent imminent death or great bodily harm. As reflected in our recitation of defendant's arguments regarding the sufficiency of the evidence, defendant's position is literally all over the place and unfocused. Ultimately, defendant's arguments fail, mainly because they hinge on accepting his version of the events that unfolded at the time of the shootings and not LA's account, which credibility matters were, of course, for the jury to decide.

This Court reviews de novo the issue regarding whether there was sufficient evidence to support a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing

the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

"The elements of [AWIM] . . . are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005) (quotation marks and citations omitted).[2] With respect to the intent to kill, it is well settled that such intent may be inferred from any facts in evidence. *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to establish a defendant's intent to kill." *Id*. In general, the intent to kill may be gleaned from the nature of the acts that constituted the assault, the temper or disposition of mind with which the acts were apparently performed, whether the means used would naturally produce death, use of a dangerous weapon, any declarations by the defendant, and all other circumstances calculated to throw light upon the intention with which an assault was made. *Brown*, 267 Mich App at 149 n 5; *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993).

Viewing the evidence in a light most favorable to the prosecutor, resolving all conflicts in the evidence in favor of the prosecution, and refusing to disturb the jury's credibility assessments, we hold that the prosecutor presented sufficient evidence to sustain the AWIM convictions. LA's discovery that defendant was paying in counterfeit money, defendant's use of a firearm, the close-range gunshot wound to LA's torso that left him paralyzed, the bullet whizzing past TL's ear, the multiple firearm discharges, defendant's flight from the scene, and his conflicting accounts of the incident given to police, all provided an abundance of evidence of an intent to kill LA and TL. This evidence additionally reflected that defendant's actions would have amounted to murder had there been a death. Furthermore, this evidence, along with the evidence indicating that LA did not have a gun, could also have led a reasonable juror to conclude that defendant's discharge of his gun exhibited more than mere recklessness and was not done in self-defense. To the extent that defendant argues heat of passion created by adequate provocation that reduced AWIM to AWIGBH, we note that the jury was not presented with this defense by argument or instruction. Although defendant's testimony about the events was inconsistent with the prosecution's theory, defendant's credibility was for the jury to assess. And the jurors were free to reject defendant's claims that LA had a gun and shot first and to embrace LA's version of events. Reversal is unwarranted.

---

[2] First-degree murder is defined in MCL 750.316, encompassing premeditated and felony murder, and all other cases of murder constitute second-degree murder, which requires, in part, malice. *People v Mendoza*, 468 Mich 527, 534; 664 NW2d 685 (2003).

Defendant next argues that trial counsel was ineffective for failing to request an instruction on mitigating circumstances, M Crim JI 17.4, based on heat of passion and adequate provocation. Defendant maintains that counsel was also ineffective by failing to investigate or obtain LA's cell phone, computer, and Snapchat records that contained photographs and videos of LA with a gun.

Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court addressed the basic principles governing a claim of ineffective assistance of counsel, stating:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Citations and quotation marks omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

A decision to not request a particular jury instruction pertains to a matter of trial strategy, *People v Gonzalez*, 468 Mich 636, 644-645; 664 NW2d 159 (2003), and trial counsel has "wide discretion in matters of trial strategy," *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007).

"Manslaughter is murder without malice." *People v Mendoza*, 468 Mich 527, 534-535; 664 NW2d 685 (2003). The *Mendoza* Court further explained:

> Regarding voluntary manslaughter, both murder and voluntary manslaughter require a death, caused by defendant, with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result. However, the element distinguishing murder from manslaughter—malice—-is negated by the presence of provocation and heat of passion. [*Id.* at 540.]

When an intentional killing is committed under the influence of passion or in heat of blood, which is produced by an adequate provocation and occurs during temporary excitement before a

reasonable time has elapsed for the blood to cool and for reason to return, the law, out of indulgence to the frailty of human nature, treats the offense as less heinous and designates it as manslaughter. *People v Pouncey*, 437 Mich 382, 388; 471 NW2d 346 (1991). Consistent with these authorities, M Crim JI 17.4, which specifically addresses mitigating circumstances in relation to an AWIM charge, provides:

> (1) The defendant can only be guilty of the crime of assault with intent to commit murder if [he / she] would have been guilty of murder had the person [he / she] assaulted actually died. If the assault took place under circumstances that would have reduced the charge to manslaughter if the person had died, the defendant is not guilty of assault with intent to commit murder.

> (2) Voluntary manslaughter is different from murder in that for manslaughter, the following things must be true:

> (3) First, when the defendant acted, [his / her] thinking must have been disturbed by emotional excitement to the point that an ordinary person might have acted on impulse, without thinking twice, from passion instead of judgment. This emotional excitement must have been caused by something that would cause an ordinary person to act rashly or on impulse. The law does not say what things are enough to do this. That is for you to decide. . . . .

> (4) Second, the killing itself must have resulted from this emotional excitement. The defendant must have acted before a reasonable time had passed to calm down and before reason took over again. The law does not say how much time is needed. That is for you to decide. The test is whether a reasonable time passed under the circumstances of this case.

> (5) If you find that the crime would have been manslaughter had the person died, then you must find the defendant not guilty of assault with intent to murder [and decide whether (he / she) is guilty of any lesser offense].

We cannot conclude that trial counsel's performance was deficient for failure to seek an instruction under M Crim JI 17.4. First, defendant's own testimony was much more consistent with self-defense than heat of passion.[3] Indeed, he did not indicate that he fired his gun in a state of emotional excitement on impulse and from passion; rather, defendant testified that he discharged his weapon upon judging that he was in danger of harm or death. Although defendant claimed that he did not intend to hit LA and the brothers and that LA had not intended to strike defendant with his gunshot, defendant nonetheless stated that he was attempting, out of fear, to prevent all three individuals from harming defendant while he escaped. Second, self-defense presented a complete defense while a defense based on mitigating circumstances would have still

---

[3] A person may use deadly force in self-defense when he or she "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself . . . ." MCL 780.972(1)(a); see also *People v Wilder*, 307 Mich App 546, 562; 861 NW2d 645 (2014).

left defendant susceptible to conviction on a lesser offense. Finally, presenting both defenses may have confused the jury and diminished the likelihood of success relative to self-defense. See *People v Dunigan*, 299 Mich App 579, 583-584; 831 NW2d 243 (2013). In sum and on the existing record, counsel's decision to solely pursue the defense of self-defense did not fall below an objective standard of reasonableness.

With respect to defendant's argument concerning LA's cell phone, computer, and Snapchat records that showed LA in possession of a firearm, we conclude reversal is unwarranted.[4] Even were we to assume that there was any deficiency in trial counsel's performance, we find that defendant fails to establish the requisite prejudice. During cross-examination, LA admitted that he had posed on Snapchat holding a gun, which defendant could have seen, and defendant testified that he saw LA holding the firearm on Snapchat. Accordingly, the jury had evidence that LA at one time possessed a gun and that defendant was aware of it.[5] Thus, the evidence that defendant argues should have been located and introduced would have added nothing of significance. Therefore, defendant was not denied a substantial defense, and the claim of ineffective assistance of counsel fails.

Defendant next argues that the 15-year minimum sentence for the AWIM convictions, which was at the top end of guidelines range, was disproportionate and unreasonable because it was not properly individualized and because the court did not give sufficient reasons in support of the minimum sentence. We disagree.

This Court's review of a guidelines sentence is restricted by MCL 769.34(10), which provides that "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." As this Court observed in *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016), the decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502

---

[4] "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis,* 250 Mich App 357, 368; 649 NW2d 94 (2002). We cannot, however, insulate the review of counsels' performance by simply calling it trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Initially, this Court must determine whether strategic choices were made after less than complete investigation, with any choice being reasonable only to the extent that reasonable professional judgment supported the limitations on investigation. *Id.*; see also *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015). The failure to present certain evidence constitutes ineffective assistance of counsel only if it deprives the defendant of a substantial defense. *Dunigan*, 299 Mich App at 589. A defense is substantial if it might have made a difference in the outcome of the trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

[5] The point of this evidence from defendant's perspective was to show that defendant had an honest and reasonable basis to fear being harmed by LA.

(2015) "did not alter or diminish MCL 769.34(10)." Therefore, "[w]hen a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *Schrauben*, 314 Mich App at 196. Defendant does not allege a scoring error nor does he assert that he was sentenced on the basis of inaccurate information. Because defendant was sentenced within the guidelines range, and he does not claim that the trial court relied on inaccurate information or erred in scoring the guidelines, his sentence would not ordinarily be subject to appellate review.

We do note, however, that MCL 769.34(10) cannot insulate the state from appellate review of a claim that a sentence is unconstitutional, e.g., an argument that a sentence constitutes cruel or unusual punishment. See *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008) (MCL 769.34[10]s' limitation on review does not apply to claims of constitutional error); see also *People v Conley*, 270 Mich App 301, 316; 715 NW2d 377 (2006) ("It is axiomatic that a statutory provision, such as MCL 769.34[10], cannot authorize action in violation of the federal or state constitutions.").

To the extent that defendant is arguing that his sentence is not proportionate for purposes of cruel-or-unusual-punishment analysis, we note that a sentence falling within the guidelines is presumptively proportionate, "and a sentence that is proportionate is not cruel or unusual punishment." *Powell*, 278 Mich App at 323. A defendant can only overcome the presumption by presenting evidence of unusual circumstances that would render a presumptively proportionate sentence disproportionate. *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). And "unusual circumstances" simply do not exist in the instant case. See *People v Davis*, 250 Mich App 357, 369-370; 649 NW2d 94 (2002) (strong family background, prior work history, no prior drug offenses, and remorse did not overcome presumption); *People v Piotrowski*, 211 Mich App 527, 532-533; 536 NW2d 293 (1995) (young age, lack of criminal record, and ill-devised crime did not constitute unusual circumstances); *People v Daniel*, 207 Mich App 47, 54; 523 NW2d 830 (1994) (employment, absence of criminal history, and minimum culpability were not unusual circumstances that overcame the presumption). Indeed, given that LA was paralyzed as a result of the shooting and that he just as easily could have been killed, the minimum sentence was entirely reasonable. Resentencing is unwarranted.

Lastly, defendant argues that the trial court's assessment of $500 in court costs under MCL 769.1k(1)(b)(*iii*) constituted an unconstitutional tax and should be vacated. The same constitutional argument regarding MCL 769.1k(1)(b)(*iii*) was addressed and rejected by this Court in *People v Cameron*, 319 Mich App 215; 900 NW2d 658 (2017). In *Cameron*, the Court held as follows:

> MCL 769.1k(1)(b)(*iii*) is a revenue-generating measure, and the courts forcibly impose the assessment against unwilling individuals. Therefore, it is a tax rather than a governmental fee. Although the statute does not expressly state that it imposes a tax, the statute is neither obscure nor deceitful, and therefore, it does not run afoul of the Distinct Statement Clause of Michigan's Constitution. Finally, because a trial court must establish a factual basis for its assessment of costs to ensure that the costs imposed are reasonably related to those incurred by the court in cases of the same nature, the legislative delegation to the trial court to impose

-8-

and collect the tax contains sufficient guidance and parameters so that it does not run afoul of the separation-of-powers provision of Const 1963, art 3, § 2. [*Cameron*, 319 Mich App at 236.]

Defendant acknowledges that *Cameron* is controlling precedent but argues that we should hold that MCL 769.1k is unconstitutional in anticipation of the Supreme Court's coming to that very same conclusion when it decides *Cameron*. Our Supreme Court, however, has now heard oral argument on whether the application for leave to appeal in *Cameron* should be granted, and it denied leave to appeal. *People v Cameron*, 504 Mich 927 (2019). Accordingly, this Court's holding in *Cameron* remains binding precedent, MCR 7.215(J)(1); consequently, we affirm the trial court's imposition of costs.

We affirm.


/s/ Jonathan Tukel
/s/ Jane E. Markey
/s/ Brock A. Swartzle