*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. L. JANOSE, Minor.

UNPUBLISHED
November 21, 2023

No. 364928
Barry Circuit Court
Family Division
LC No. 19-009353-NA

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Respondent-father (respondent) appeals as of right the trial court's order terminating his parental rights to the minor child, JLJ, under MCL 712A.19b(3)(b)(*i*) (parent caused physical or sexual abuse to sibling), MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions leading to adjudication), MCL 712A.19b(3)(j) (likelihood of harm if child returned to parent), MCL 712A.19b(3)(k) (criminal sexual conduct involving penetration), and MCL 712A.19b(3)(m)(*i*) (parent convicted of criminal sexual conduct). We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In June 2018, respondent lived with his then wife, SJ, the couple's biological infant, JLJ, and respondent's stepdaughter, EAR, SJ's child from a prior relationship. At that time, SJ slept in the living room purportedly because of her snoring. Respondent and EAR shared a close relationship. Although EAR had her own bedroom, EAR was allowed to stay up late in respondent's bedroom with him and watch television. In late June 2018, EAR was with respondent in his bed when he inappropriately touched her private parts. To stop respondent's actions from continuing, EAR rolled out of the bed onto the floor and crawled out of the bedroom.

After the sexual abuse occurred,[1] respondent filed a complaint for divorce against SJ on August 29, 2018. In March 2019, respondent and SJ agreed to a shared custody arrangement of

---

[1] There were inconsistencies in the statements of the witnesses regarding when respondent left the marital home and the reason for his departure.

JLJ and waived the assistance of the Friend of the Court. On March 6, 2019, the judgment of divorce was entered.

In December 2019, EAR reported[2] the June 2018 acts of sexual abuse to her school counselor. The Department of Health and Human Services (DHHS) filed a petition seeking the removal of JLJ from respondent's care and to initiate child-protective proceedings based on allegations that respondent sexually assaulted EAR while he was still married to SJ. In early 2020, respondent was criminally charged with first and second-degree criminal sexual conduct (CSC). However, respondent pleaded no-contest to attempted second-degree CSC. He was sentenced to 90 days in jail and five years of probation. In the child-protective proceeding, respondent also entered a no-contest plea to the petition's allegation that he touched EAR for sexual purposes.

Respondent completed sex-offender treatment through his probation and counseling through the DHHS. But, respondent's effort and the sincerity of his participation was questioned. Throughout the case, respondent gave various explanations for the abuse, ranging from a denial of the abuse, a correlation between the allegations and the divorce, accident, mistaking EAR for his spouse, alcohol, sleep, and a lack of memory. Respondent, however, ultimately seemed to conclude that he had no memory of the abuse yet chose to believe EAR's allegations. Despite this claim of lack of memory, he was able to delineate the events that occurred before the acts of sexual abuse as well as recall the sound of EAR dropping out of the bed. Additionally, respondent questioned the "fairness" of the allegations raised against him and did not consider the impact on EAR's life.

After the petition was filed, respondent initially participated in supervised parenting time with JLJ, and the DHHS reported that those sessions went well. His parenting time was suspended after he was sentenced in the criminal case, and it was never reinstated. Eventually, the trial court ordered the DHHS to pursue termination, concluding that respondent failed to make progress in the case. After holding a two-day hearing, the court entered an order terminating respondent's parental rights. This appeal followed.

## II. ANALYSIS

### A. PROTECTION AGAINST SELF-INCRIMINATION

Respondent alleges that the trial court erred by concluding that statutory grounds for termination had been established by clear and convincing evidence because the court's requirement that respondent make a full admission violated his right against self-incrimination. Alternatively, respondent contends he complied with, and benefited from, his case service plan. We disagree.

---

[2] EAR asserted that she previously disclosed the sexual abuse to various adults, including SJ. There was a disparity in the statements and testimony of the witnesses regarding when EAR first made the abuse disclosure and whether she was believed. Nonetheless, EAR's statement to her counselor precipitated an investigation.

In general, "[t]o preserve an issue for appellate review, the issue must be raised before, addressed by, and decided by the lower court." *In re Killich*, 319 Mich App 331, 336; 900 NW2d 692 (2017). In this case, although respondent opposed the termination of his parental rights in the lower court proceedings, he did not assert that the trial court's requirement, that he fully admit the sexual abuse allegations, violated his Fifth Amendment Right against self-incrimination. Rather, respondent asserted that he did not remember committing the abuse in question, so he could not make any admission. Therefore, this issue is unpreserved.

Unpreserved claims are reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "When plain error has occurred, [r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; alterations in original).

We review the trial court's decision that statutory grounds for termination have been established for clear error. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). Moreover, "[a]ppellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009).

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App at 139. In this case, respondent's parental rights were terminated under MCL 712A.19b(3)(b)(*i*), (3)(c)(*i*), (3)(j), (3)(k)(*ii*), and (3)(m)(*i*).

In December 2019, EAR disclosed sexual abuse by respondent that occurred in June 2018. DHHS initiated this case because of those allegations of sexual assault. In addition to the child-protective proceedings, respondent was criminally charged with acts of CSC. He subsequently pleaded no-contest to attempted second-degree CSC in the criminal case and was sentenced to 90 days in jail and five years' probation. Additionally, in this case, respondent entered a no-contest plea to the allegation in the petition that he touched EAR's private parts for sexual purposes. Respondent participated in sex-offender treatment through his probation and counseling through the DHHS. But, throughout this case, respondent maintained that he did not remember assaulting EAR. However, he did not deny that the assault occurred. The trial court did not believe that respondent showed a benefit from services because he did not admit to committing the abuse. Defendant submits it is a violation of his constitutional rights to compel such an admission.

In pertinent part, the Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." US Const, Am V; see also Const 1963, art 1, § 17.[3] "The privilege against self-incrimination permits a

---

[3] "No person shall be compelled in any criminal case to be a witness against himself[.]"

defendant to refuse to answer official questions in any other proceeding, no matter how formal or informal, if the answer may incriminate him or her in future criminal proceedings." *In re Blakeman*, 326 Mich App 318, 333; 926 NW2d 326 (2018). Fifth Amendment protections are applicable in child-protective proceedings. *Id*. at 333.

Applying *In re Blakeman*, respondent contends that the trial court erred in requiring him to admit to the sexual abuse to preserve his parental rights. In *Blakeman*, 326 Mich App at 321, the respondent and his wife had four children. The respondent's wife would babysit an unrelated toddler on occasion. *Id*. This toddler had previously suffered a seizure and was subsequently prone to screaming and crying while in the respondent's home. *Id*. On the day in question, the respondent was watching the toddler while his wife went to pick up food for dinner. *Id*. The toddler was unresponsive when the wife returned. *Id*. At the hospital, physicians found that the toddler suffered a skull fracture that they believed was nonaccidental. *Id*. at 322. The following day, the DHHS filed a petition and removed the respondent's four children from his care. *Id*. At the adjudicative bench trial, the respondent was informed of and waived his right of self-incrimination, maintained his innocence, and claimed that he was unaware of how the toddler sustained the skull fracture. *Id*. Despite the respondent's testimony, the trial court found that the respondent fractured the toddler's skull. *Id*. The trial court would not allow the respondent to reunify with his children unless he admitted to physically abusing the toddler. *Id*. at 333.

On appeal, this Court noted that the trial court gave the respondent a "Hobbesian choice" to either admit to the child abuse as a condition of completing services, and expose himself to possible criminal liability, or to maintain his innocence, which would likely result in the termination of his parental rights to his four children. *Id*. at 334-335. In other words, this Court determined that the respondent had to choose between his liberty interests or his children. *Id*. at 335-336. This Court determined that "[b]y requiring respondent to confess to the criminal abuse of the toddler in order to regain care and custody of his children, the trial court was requiring an inculpatory admission against respondent's penal interests." *Id*. at 339. And, this required admission could lead to criminal charges that would possibly lead to incarceration and the respondent's removal from the lives of his children. *Id*. Moreover, because the respondent had testified at the adjudicative trial and denied any wrongdoing, it further possibly subjected him to perjury charges. Ultimately, this Court concluded that the trial court violated the respondent's right against self-incrimination by conditioning eventual reunification on the respondent's admission to the child abuse. *Id*.

Contrary to respondent's assertion, the *Blakeman* decision is not dispositive in the present case. First, respondent entered into an agreement with SJ, his ex-wife, in the custody case. As part of that agreement, respondent agreed to complete the "Vanderbeck Safety Criteria,"[4] which required respondent to take responsibility for the sexual abuse by admitting it in detail.[5] Moreover,

---

[4] The Vanderbeck Safety Criteria was developed by a Dr. Vanderbeck and utilized by courts in Barry County.

[5] Thus, to the extent that respondent agreed to complete the Vanderbeck Safety Criteria and did not raise any constitutional challenge, we note that a party may not harbor error as an appellate parachute. See *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

the agreement required respondent to identify and demonstrate an understanding of the triggers, motives, and dynamics of the abuse.

Moreover, unlike the *Blakeman* respondent who was not charged criminally with child abuse, in the present case, respondent was criminally charged and ultimately pleaded no-contest to attempted second-degree CSC. He also pleaded no-contest to the allegation that he inappropriately touched EAR's private parts for sexual purposes. "A no-contest or a guilty plea constitutes a waiver of several constitutional rights, including the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers." *People v Cole*, 491 Mich 324, 332; 817 NW2d 497 (2012). Respondent further testified in his case-in-chief at the termination hearing. He maintained that he did not remember abusing EAR, but he did not deny that the abuse occurred.

Given that respondent initially agreed to admit the abuse in detail and he entered no-contest pleas to the abuse in the criminal and child protection cases, the trial court did not violate respondent's right against self-incrimination by questioning respondent's progress in services without an admission to the abuse. Respondent was charged with and negotiated a plea to criminal charges, resulting in his conviction. He also did not dispute that he committed the offense. To the extent that respondent submits on appeal that further admission on his part could result in him being charged for perjury or the revocation of his no-contest plea in the criminal case, there is no actual support for either contention. Respondent served his jail sentence, and by all accounts, he was fully compliant with his probation. He also stated that he was entering the no-contest plea in the criminal case to avoid civil liability and did not correlate the plea to a lack of recollection of the offense. Accordingly, the court's requirement that respondent admit to the sexual abuse did not constitute plain error affecting his substantial rights. See *In re Utrera*, 281 Mich App at 8.[6]

Finally, respondent asserts that the trial court erred by concluding that he failed to benefit from services. There is no dispute in this case that respondent completed sex-offender treatment and participated in counseling. Throughout the case, respondent maintained that he had no memory of the abuse of EAR. Expert witnesses testified that respondent had a low risk of recidivism. And the experts appeared to agree that failure to make an admission did not increase the risk of recidivism or negatively affect the ability to benefit from services.

Nonetheless, the trial court did not believe respondent's claim that he could not remember the offense. The court observed that respondent remembered events that occurred before and after the offense. Respondent also offered different explanations throughout the case. He claimed that he did not remember the offense because he was sleeping. He additionally claimed that he was drinking heavily that night or that he believed that it was SJ, his ex-wife, in bed with him. The court opined that respondent improperly focused on how the offense negatively affected his life,

---

[6] Respondent further submits that Barry County's use of the Vanderbeck Safety Criteria is unconstitutional. However, during the child-protective proceedings below, it was unclear whether Barry County would continue to utilize the criteria, citing a lack of training by service providers. Moreover, respondent failed to demonstrate that there was no set of circumstances under which the application of the Vanderbeck criteria was constitutionally valid. See *People v Wilder*, 307 Mich App 546, 556; 861 NW2d 645 (2014). Under the circumstances, we reject this challenge.

instead of considering how the event affected EAR and JLJ. Respondent also failed to identify the circumstances that led to the abuse. Because of respondent's failure to identify any triggers that led to the abuse and any recollection of it, the trial court questioned whether the safety plan or supervising family members would protect JLJ. As a result, the court opined that the circumstances still existed, and there was a reasonable likelihood that JLJ would suffer harm in the foreseeable future if placed with respondent. The court further noted that respondent's mother and his girlfriend did not believe that he abused EAR, and therefore, they would not be appropriate individuals to keep respondent accountable.

Under these circumstances, the trial court's conclusion, that respondent failed to properly benefit from services, was not clearly erroneous. See *In re VanDalen*, 293 Mich App at 139. The child-protective proceeding was pending for over two years and the testimony showed that JLJ could not be safely returned to respondent's home without supervision. Accordingly, the trial court's determination that statutory grounds for the termination of respondent's parental rights had been established by clear and convincing evidence was not clearly erroneous. See *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (concluding that the trial court did not clearly err by finding that the evidence supported terminating the respondent mother's parental right under MCL 712A.129b(3)(g) and (3)(j) because she failed to benefit from her service plan and her behavior would likely put her children at a risk of harm).

## B. BEST INTERESTS

Respondent also submits that the trial court erred by concluding that termination of his parental rights was in JLJ's best interests. We disagree.

We review the trial court's determination that termination was in the children's best interests for clear error. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "Even if the trial court finds that the [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (quotation marks and citation omitted). "In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *Id.* at 277 (quotation marks and citation omitted). While determining the child's best interests, the court may consider a variety of factors, including the "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* (quotation marks and citation omitted). "The trial court may also consider the child's age, inappropriate parenting techniques, and continued involvement in domestic violence." *Id.* "It may further consider visitation history, the parent's engaging in questionable relationships, the parent's compliance with treatment plans, the child's well-being in care, and the possibility of adoption." *Id.*

In this case, there is no dispute that respondent had a strong bond with JLJ, although it was unclear whether this bond remained after respondent's parenting time was suspended for almost a year and a half. In any event, the trial court opined that JLJ's need for permanency and the foreseeable risk of harm outweighed that bond. See *In re Jones*, 316 Mich App 110, 120; 89 NW2d 54 (2016) (acknowledging that the respondent shared a bond with her children, but

concluding that the bond was outweighed by the children's need for safety, permanency, and stability). Moreover, the court considered that JLJ had not suffered any mental or physical issues as the result of being separated from respondent. The court did not want to disturb her current living situation because she was doing so well. The court also observed that placing JLJ in respondent's home would mean placing her with respondent, who failed to acknowledge the harm he caused to EAR, and other individuals who did not believe that respondent committed sexual abuse. Further, one of the caseworkers testified that she would be comfortable with respondent having supervised parenting time; however, she was unsure how to progress to respondent having unsupervised parenting time. As a result, it was unclear whether JLJ could be safely returned to respondent's care without the involvement of the DHHS, and the DHHS cannot be involved indefinitely. See *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012) (although the respondents made some progress, the evidence showed that it was unlikely that the children could be returned to the home within the foreseeable future, if at all). Accordingly, the trial court did not clearly err by determining that termination of respondent's parental rights was in JLJ's best interests. *Id*. at 248.

Affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick