*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL CALVIN KNOL,

        Defendant-Appellant.

UNPUBLISHED
January 25, 2024

No. 360581
St. Clair Circuit Court
LC No. 21-000088-FC

Before: M. J. KELLY, P.J., and MARKEY and CAMERON, JJ.

PER CURIAM.

Defendant, Michael Knol, appeals as of right his sentences relating to two counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a) (sexual contact with a person under 13 years of age).[1] Knol was sentenced to 43 months to 15 years' imprisonment for each count. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Knol, who was in a dating relationship with the victim's mother at all relevant times, sexually assaulted the victim when she was less than 13 years of age. The victim testified that in 2007, when she was six years old, Knol entered her bedroom at night and put his hands on her thighs, arms, and "butt area." In 2009, when she was eight years old, she woke up with Knol touching her groin and the insides of her thighs with his hands. She recalled that he would also crawl into her bed, remove her pants and underwear, and touch her "groin area" with his hands. He would also rub his penis against her back. Following a jury trial, Knol was convicted of two counts of CSC II. Because of his convictions, Knol is required to register as a sex offender under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, MCL 28.725(1); MCL 28.725(13); and submit to electronic monitoring once released from prison, MCL 750.520c(2)(b).

---

[1] Knol was acquitted of three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (sexual penetration with a person under 13 years of age).

-1-

## II. CONSTITUTIONAL CHALLENGES

### A. STANDARD OF REVIEW

Knol argues that SORA's requirement of lifetime registration constitutes cruel and unusual punishment as prohibited by US Const, Am VIII, and cruel or unusual punishment as prohibited by Const 1963, art 1, § 16. He also contends that MCL 750.520c(2)(b)'s requirement that he be subjected to lifetime electronic monitoring after he is released from prison violates US Const, Am VIII, and Const 1963, art 1, § 16, and amounts to an unreasonable search under US Const, Am IV, and Const 1963, art 1, § 11. "Questions relating to statutory interpretation are reviewed de novo." *People v Malone*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 331903); slip op at 4. We also review de novo constitutional questions. *Id*. "When interpreting a statute, the court's overriding goal is to give effect to the Legislature's intent by examining the plainly expressed language." *Id*. "A statute is presumed to be constitutional, and courts will construe a statute as constitutional unless its unconstitutionality is plainly apparent. The party challenging the statute's constitutionality has the burden of proving its invalidity." *Id*. (citations omitted).

A constitutional challenge to a statute "can be brought in one of two ways: by either a facial challenge or an as-applied challenge." *People v Jarrell*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 356070); slip op at 9. A facial challenge to the constitutionality of a statute is "a claim that a legislative enactment is unconstitutional on its face, in that there is no set of circumstances under which the enactment is constitutionally valid." *People v Wilder*, 307 Mich App 546, 556; 861 NW2d 645 (2014). An as-applied challenge "alleges a present infringement or denial of a specific right[,] or of a particular injury in process of actual execution of government action." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

### 1. MANDATORY LIFETIME REGISTRATION

Knol's CSC II convictions, which involved a victim less than 13 years of age, are Tier III offenses. See MCL 28.722(v)(*v*). As a result, Knol is subject to the requirements of SORA, including lifetime registration. MCL 28.725(1); MCL 28.725(13). On appeal, Knol argues that the 2021 SORA's requirements are unconstitutional both facially and as applied under the United States Constitution, which forbids cruel *and* unusual punishment, US Const, Am VIII; and the Michigan Constitution, which prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16. "As a threshold matter, the constitutional prohibition against cruel or unusual punishment requires that there first be a punishment imposed." *Jarrell*, ___ Mich App at ___; slip op at 9 (quotation marks and citation omitted). In *People v Lymon*, 342 Mich App 46, 78; 993 NW2d 24 (2022), this Court concluded that the 2021 amendments to SORA promoted the traditional aim of punishment. The *Lymon* Court did not address whether mandatory lifetime registration under SORA constituted cruel or unusual punishment, but instead addressed whether the registration requirement was cruel or unusual punishment when imposed for a crime that lacked a sexual component and was not sexual in nature. *Id*. at 82. In light of the determination in *Lymon* that the 2021 SORA amendments constitute punishment, Knol argues the lifetime registration requirement violates the Michigan Constitution's prohibition on cruel or unusual punishment.

To determine whether a punishment is cruel or unusual, courts assess whether it is "unjustifiably disproportionate" to the offense committed by considering four factors: (1) the harshness of the penalty compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed for other offenses in Michigan, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the goal of rehabilitation. [*Id*.]

"[T]he dominant test is the proportionality question, which is whether the punishment is so excessive that it is completely unsuitable to the crime." *People v Hallak*, 310 Mich App 555; 873 NW2d 811 (2015) (quotation marks and citation omitted), rev'd in part on other grounds 499 Mich 879 (2016). "Legislatively mandated sentences are presumptively proportional and presumptively valid. In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Burkett*, 337 Mich App 631, 637; 976 NW2d 864 (2021) (quotation marks and citation omitted).

Knol's convictions stemmed from his relationship with the victim, who was less than 13 years of age at the time of the assaults. Knol, who was in a relationship with the victim's mother and lived in the same home as the victim, cultivated a relationship with the victim and acted as a parental or authority figure. As noted above, the victim testified that Knol entered her bedroom at night and had sexual contact with her intimate parts. The victim, who was frightened of Knol, did not oppose him. It also took a number of years before she reported the assaults.

The Legislature has determined CSC II warrants a maximum penalty of 15 years in prison. MCL 750.520c. Under SORA, Knol is required, as a result of the offenses, to register as a sex offender. Although potentially longer in duration than the maximum term of imprisonment, and although imposing serious restrictions on where Knol can live or work, sex offender registration imposes significantly less loss of liberty than confinement in prison. Lifetime registration, however harsh it might be, is not unduly harsh considering the gravity of Knol's sexual crimes against a victim who is less than 13 years of age. In light of the gravity of Knol's offenses, mandatory lifetime registration is a proportionate punishment.

Next, comparing Knol's mandatory registration and monitoring under SORA to the penalties for other offenses in Michigan, SORA registration is not the only mandatory penalty in Michigan law. As noted in *Malone*, ___ Mich App at ___; slip op at 6:

Mandatory lifetime imprisonment is the penalty imposed for first-degree murder, MCL 750.316(2). Two years' imprisonment is the mandatory punishment for the possession of a firearm during the commission of a felony, MCL 750.227b(1). A second conviction results in the mandatory punishment of five years' imprisonment, and a third conviction is subject to a mandatory 10-year period. *Id*. Additionally, certain CSC-I convictions may impose a mandatory 25-year minimum sentence, MCL 750.520b(2)(b), or a mandatory life sentence, MCL 750.520b(2)(c).

Furthermore, the unique circumstances surrounding the CSC II offenses justify the uniqueness of a defendant's lifetime registration requirement. Victims of CSC II who are less than 13 years of age tend to be more vulnerable victims, especially when they are targeted by adults who are using a position of trust within a household. See *People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008) (listing factors demonstrating vulnerability in the context of OV 10, including the victim's youth, the existence of a domestic relationship, whether the offender abused his or her authority status, and whether the offender exploited a victim by his or her difference in size or strength or both). Additionally, the lifetime registration requirement is mandated under SORA. "Legislatively mandated sentences are presumptively proportional and presumptively valid, and a proportionate sentence is not cruel or unusual." *Jarrell*, ___ Mich App at ___; slip op at 11 (quotation marks and citations omitted). On this record, Knol has failed to show the punishment is disproportionately harsh compared to other penalties imposed in Michigan.

Further, Knol's mandatory lifetime sex offender registration is not an unduly harsh punishment when compared to punishments for similar offenses in other states, and thus not unique. "Many states have a tiered system for sex offender registration, with lifetime registration reserved for the most heinous perpetrators of sexual assault." *Id.* Consequently, SORA's registration requirement is not materially different from sex offender registries in other states, and it is not unduly harsh.

With respect to the goal of rehabilitation, "the lifetime registration under SORA does not advance the goal of rehabilitation. . . ." *Id.* Regardless, given the strength of the other three factors, we conclude that the punishment of lifetime registration is not cruel or unusual as applied to Knol's CSC II convictions. See *id.* ("[W]hile lifetime registration under SORA does not advance the goal of rehabilitation, the other three factors strongly support that such a punishment is neither cruel nor unusual as applied to Jarrell's CSC-I convictions."). Consequently, on this record, Knol has not established constitutional error in his as-applied challenge that mandatory lifetime registration under SORA violates Michigan's prohibition on cruel or unusual punishment.

With respect to Knol's facial challenge, we conclude that he cannot meet the standard of proving SORA's mandatory lifetime registration requirement is facially cruel or unusual under the Michigan Constitution. Knol argues that, because the trial court had no discretion to fit the term of registration to the facts of his case, the mandatory penalty violates Michigan's established principle of individualized sentencing and constitutes cruel or unusual punishment. However, registration is statutorily mandated for individuals convicted of the offenses that Knol was convicted of—it is not a discretionary provision under the sentencing guidelines. Yet, if a statute "is valid under the facts applicable to defendant then it is certainly capable of being upheld against a facial challenge." *Hallak*, 310 Mich App at 569. Because Knol's sentence was constitutional as applied to him, SORA's mandatory lifetime registration requirement is valid on its face. Moreover, because the requirement passes muster under the state constitution, Knol cannot prevail on his argument that SORA violates US Const, Am VIII. See *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) ("If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution.") (Quotation marks and citation omitted.).

## 2. MANDATORY LIFETIME ELECTRONIC MONITORING

MCL 750.520c(2)(b) requires a trial court to sentence a defendant who is convicted of CSC II "to lifetime electronic monitoring . . . if the violation involved sexual contact committed by an individual 17 years of age or older against an individual less than 13 years of age." Knol argues the lifetime monitoring requirement is cruel and unusual punishment as prohibited by US Const, Am VIII, and cruel or unusual punishment as prohibited by Const 1963, art 1, § 16. He also asserts that lifetime electronic monitoring violates the Fourth Amendment of the United States Constitution, US Const, Am IV, or the Michigan Constitution, Const 1963, art 1, § 11, which guarantee every person's right to be free from unreasonable searches and seizures.

Our Supreme Court has held lifetime electronic monitoring constitutes "punishment," and is subject to the constitutional limitations against cruel or unusual punishments. *People v Cole*, 491 Mich 325, 335-336; 817 NW2d 497 (2012). In *Hallak*, 310 Mich App at 577, this Court addressed the constitutionality of lifetime electronic monitoring and held such punishment "does not violate [a] defendant's state or federal rights against cruel and/or unusual punishment" facially or as applied. Further, the *Hallak* Court held that the use of an electronic monitoring device to monitor the movements of the defendant, who had been convicted of CSC II, constituted a search under the Fourth Amendment, but such a search of a defendant 17 years or older convicted of CSC II against a person under the age of 13 was not unreasonable. *Id*. at 579. Given that this Court has already held that lifetime electronic monitoring is not cruel or unusual or an unreasonable search under the circumstances present in this case, Knol is not entitled to relief.[2]

## III. OFFENSE VARIABLES

## A. STANDARD OF REVIEW

Knol argues the trial court improperly assessed 15 points each for offense variables (OVs) 8 and 10. He further argues his due-process rights were violated because he was sentenced on the basis of inaccurate information. We review constitutional issues, such as due process challenges, de novo. *Benton*, 294 Mich App at 203. Likewise, we review de novo whether a trial court properly interpreted and applied the sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016).

---

[2] Although Knol heavily relies on *State v Grady*, 372 NC 509; 831 SE2d 542 (2019), and *Park v State*, 305 Ga 348; 825 SE2d 147 (2019), those opinions are not binding. See *People v Campbell*, 289 Mich App 533, 535; 798 NW2d 514 (2010). In contrast, we are bound to follow the decision in *Hallak*. MCR 7.215(C)(2).

## B. ANALYSIS

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). "It is well settled that the use of inaccurate information at sentencing may violate [a] defendant's constitutional right to due process." *People v Hoyt*, 185 Mich App 531, 533; 462 NW2d 793 (1990). "[D]ue process is satisfied as long as the sentence is based on accurate information and the defendant has a reasonable opportunity at sentencing to challenge that information." *People v Williams*, 215 Mich App 234, 236; 544 NW2d 480 (1996).

Knol contends that the trial court erred by assessing 15 points for OV 8. The trial court must score OV 8 at 15 points if "[a] victim is asported to another place of greater danger or to a situation of greater danger . . . ." MCL 777.38(1)(a) (alteration in original). "[M]ovement of a victim that is incidental to the commission of a crime . . . qualifies as asportation under OV 8." *People v Barrera*, 500 Mich 14, 22; 892 NW2d 789 (2017). Knol argues that there was no evidence presented at trial establishing that he moved the victim before or while he assaulted her. However, the presentence information report (PSIR) reflects that the victim reported "she was often asleep when the defendant would come wake her up and *take her into another room* to assault her." (Emphasis added). Knol expressly did not challenge the accuracy of any of the factual statements included in the report. "A presentence report is presumed to be accurate and may be relied on by the trial court unless effectively challenged by the defendant." *People v Callon*, 256 Mich. App. 312, 334; 662 N.W.2d 501 (2003). Because the presentence report indicates that the victim was asported from one room to another, OV 8 was properly assessed at 15 points. See *Barrera*, 500 Mich at 21-22 (concluding the trial court properly assessed OV 8 at 15 points because the "defendant took the victim from the living room into his bedroom in order to sexually assault her").

Next, Knol argues that the trial court erred by assessing 15 points for OV 10. A trial court must assess 15 points when predatory conduct is involved. MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). " 'Victimize' " is defined as "to make a victim of." *Cannon*, 481 Mich at 161. " '[V]ictim' is defined as '1. a person who suffers from a destructive or injurious action or agency 2. a person who is deceived or cheated[.]' " *Id*. (alterations omitted). "[P]oints should be assessed under OV 10 only when it is readily apparent that a victim was 'vulnerable,' i.e., was susceptible to injury, physical restraint, persuasion, or temptation." *Id*. at 158 (citation omitted).

> Factors to be considered in deciding whether a victim was vulnerable include (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. The mere existence of one of these factors does not automatically render the victim vulnerable. [*Id*. at 158-159.]

-6-

In *Cannon*, our Supreme Court stated that a court may assess 15 points for OV 10 if it can answer the following questions in the affirmative:

> (1) Did the offender engage in conduct before the commission of the offense?

> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? [*Id*. at 161-162.]

Moreover, "the sentencing judge must determine if there was preoffense conduct directed at a victim for the primary purpose of victimization." *Id*. at 159 (quotation marks omitted). Regardless:

> "predatory conduct" . . . does not encompass *any* "preoffense conduct," but rather only those forms of "preoffense conduct" that are commonly understood as being "predatory" in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or "preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection. [*People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011).]

In this case, the victim was vulnerable. She was less than 13 years of age when Knol perpetrated the crimes. Knol, who lived in the same home as the victim, was more than 17 years of age at all relevant times and was an authority figure. Further, Knol engaged in preoffense conduct. Knol, who was in a relationship with the victim's mother, waited until others in the home were asleep before entering the victim's bedroom and perpetrating the assaults. The victim testified that she was typically asleep when Knol began to touch her intimate parts. She did not oppose Knol or initially report the assaults because she feared Knol, who would excessively punish her for even minor infractions. Given the record in this case, OV 10 was properly assessed 15 points. Because Knol was sentenced on the basis of accurate information, his due-process rights were not violated. Knol is not entitled to resentencing.

Affirmed.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Thomas C. Cameron

-7-